GIOVANNA CONA, PLAINTIFF-APPELLANT, v. HENRY HUDSON COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.

Argued March 17, 1914—Decided June 15, 1914.

Every sovereign state has control over property within its borders. The conditions of the ownership of real estate in a given country, whether the owner be citizen or alien, resident or non-resident, are subject to the laws of that state concerning the holding and transfer thereof, and of establishing title thereto. Partition, including sale in lieu of actual partition of lands in New Jersey, is within the doctrine stated; and notice of publication, &c., to

non-resident owners and persons believed to be dead, their heirs, devisees or personal representatives, under the provisions of the Chancery act, clothes the Court of Chancery with power to decree a partition or sale in lieu of partition, and make good title thereto, whether by decree for actual partition, or through a deed of conveyance made by a master in chancery in pursuance of a decree for sale.

On appeal from the Hudson County Circuit Court.

For the appellant, *McDermott & Enright.*

For the respondent, *Frederick K. Hopkins.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was a suit in the Hudson Circuit Court to recover damages for an alleged breach of covenants of seizin and right to convey.

The defendant company, on November 23d, 1912, made, executed and delivered to the plaintiff a conveyance for certain land in West Hoboken, Hudson county, which deed contained a covenant that the defendant, at the time of the sealing and delivery thereof, was lawfully seized in its own right of a good, absolute and indefeasible estate of inheritance in fee-simple in the described lands, and had good right, full power and lawful authority to convey the same. The land mentioned was conveyed by John S. Mabon, Esq., special master in chancery, September 22d, 1911, to a predecessor in title of the defendant. The sale was made in pursuance of a decree for sale in partition in the Court of Chancery. The gravamen of the complaint was that a portion of the land, viz., four-thirtieths thereof, was at the time of filing the bill for partition vested in James B. McRae, and that in the proceedings in partition it was averred that McRae was dead and that he left heirs, devisees and personal representatives who were unknown, but who were, by virtue of the relationship mentioned, seized in fee and entitled to the undivided four-thirtieths parts of the premises; that McRae was not served with process; that his heirs, devisees and personal representatives were not, nor

were any one of them, specifically named or served with process; that under an order of publication made in the cause, notice, as required by the Chancery act and the rules of the Court of Chancery, directed to "James B. McRae, his heirs, devisees and personal representatives," was published but not served on him, them or any of them. No complaint is made of defective proceedings under the act, but only that the act is powerless to confer jurisdiction.

The special master to whom the cause was referred reported, and the decree for sale adjudged, that the heirs, devisees and personal representatives of McRae, who were unknown, were seized in fee and entitled to the undivided four-thirtieths parts of the premises sought to be partitioned. After sale, upon distribution made, the net proceeds of the four-thirtieths parts were paid into the Court of Chancery by the special master making the sale.

It is averred that the partition proceedings, so far as they related to the undivided share or interest in the premises which was of James B. McRae, deceased, were imperfect and defective, and failed to vest a good title thereto in the grantee to whom the special master conveyed, who was a predecessor in title of the defendant, by whom the premises were conveyed to the plaintiff with covenants of title and right to convey.

The Chancery act (*Comp. Stat., p.* 413, § 10) provides that in actions in the Court of Chancery whenever it shall appear that any person mentioned, or his heirs, devisees or personal representatives, are proper parties defendant, and that complainant, after diligent and careful inquiry therefor made as in the case of absent defendants, has been unable to ascertain whether such person is still alive or if known or believed to be dead has been unable to ascertain the names or residences of his heirs, devisees or personal representatives, such action may proceed against such person by name and his heirs, devisees or personal representatives as in the case of absent defendants whose names are known; and such notice as is required by law to be published against absent defendants, in default of personal service, addressed to such person by name

and to his heirs, devisees and personal representatives, shall be published and mailed, &c., and such action may proceed in all respects as if such person or his heirs, devisees and personal representatives had been named and described and served with process of subpœna and had failed to plead, answer or demur within the time allowed by law. And section 11 provides, that all such defendants and all persons who fall within the description of heirs, devisees or personal representatives of the defendant supposed to be dead, shall thereupon be bound by all orders and decrees as if they had been duly named ·and served with process in this state.

Defendant in its answer averred that the complaint failed to disclose any cause of action and moved the court to determine the question so raised before trial; whereupon the court, after hearing, ordered that the complaint be struck out and dismissed, with costs, and the plaintiff thereupon appealed to this court.

It was argued on behalf of appellant that under the authority of *Hill* v. *Henry,* 66 *N. J. Eq.* 150, the proceedings in partition upon which the master's deed was founded, were void as to the four-thirtieths interest of McRae. On the contrary we regard Hill *v.* Henry as authority for the validity of those proceedings.

That case (Hill *v.* Henry) was one to quiet title to land, and Vice Chancellor Stevens held that sections 10 and 11 of the Chancery act had no application to such a case because of the provisions of the act to quiet titles, remarking (at *p.* 160) :

"The act throughout contemplates a proceeding against definite individuals known to have an actual existence, not an indefinite class whose membership and whose very existence are unascertained. Thus construed, the act is in harmony with well established procedure, in a particular involving fundamental rights."

That Hill *v.* Henry is an authority for the respondent in this case is apparent from the observations of the Vice Chancellor (at *p.* 154) :

"*Fourth.* In suits strictly *in rem,* that is, where the prop-

erty itself, conceived of as having done the wrong or as having been the instrument of its commission, is being proceeded against; and in suits *quasi in rem,* that is, where the suit is against the person in respect to the *res*—where, for example, it has for its object partition or the sale or other disposition of defendant's property within the jurisdiction, to satisfy plaintiff's demand by enforcing a lien upon it—personal service within the jurisdiction or appearance is not necessary. The decree can, however, extend only to the property in controversy. But there is this distinction between these two classes of proceedings: in the former, public citation to the world is all that is necessary and the decree binds everybody; in the latter, defendant's interest is alone sought to be affected; he must be cited to appear and the judgment therein is conclusive only between the parties. *Freeman* v. *Alderson,* 119 *U. S.* 185.

"*Fifth.* Both of the classes of cases last mentioned have this in common. The *res,* the subject of the controversy, is within the jurisdiction, and it is because it is so that the court is able to affect defendant's interest in it. There is a further case, illustrated, so far, by proceedings to quiet title. The case is based upon a denial of any '*res*' in the defendant. In this class of cases the Supreme Court has taken a distinction. If the decree sought be a decree operating *in personam* only, to be made under the ordinary jurisdiction of equity—a decree, for instance, that the defendant make or cancel a conveyance; that defendant be restrained from asserting his claim—it can only be made after personal service within the jurisdiction or after appearance. *Hart* v. *Sansom,* 110 *U. S.* 151. But if the decree be taken under a statute which authorizes the court to determine the question of title and to decree it to the party entitled, then it binds without such service or appearance if the statute has provided 'a reasonable method of imparting notice.' *Arndt* v. *Griggs,* 134 *U. S.* 316."

Nor is there anything in the learned Vice Chancellor's observations concerning the difference between proceedings strictly *in rem* and those *quasi in rem* to the effect that the

latter are more doubtful as to validity (citing *Arndt* v. *Griggs,*
134 *U. S.* 316, and *Freeman* v. *Alderson,* 119 *Id.* 185), which
militates against our view that that case (Hill *v.* Henry) is
an authority for the respondent in the case at bar.

In Arndt *v.* Griggs the Supreme Court of the United States
decided that a decree quieting title against a defendant brought
in by publication under the statute of Nebraska, was good
because the act of that state permitted constructive service by
publication in that class of cases.   Mr. Justice Brewer, who
wrote the opinion, speaking of a state's power over titles to
land within its borders, said (at *p.* 320) :

"The question is not what a court of equity, by virtue of
its general powers and in the absence of a statute, might do,
but it is, What jurisdiction has a state over titles to real
estate within its limits, and what jurisdiction may it give by
statute to its own courts, to determine the validity and extent
of the claims of non-residents to such real estate?   If a state
has no power to bring a non-resident into its courts for any
purposes by publication, it is impotent to perfect the titles of
real estate within its limits held by its own citizens; and a
cloud cast upon such title by a claim of a non-resident will
remain for all time a cloud, unless such non-resident shall
voluntarily come into its courts for the purpose of having it
adjudicated.   But no such imperfections attend the sovereignty
of the state.   It has control over property within its limits;
and the condition of ownership of real estate therein, whether
the owner be stranger or citizen, is subject to its rules con-
cerning the holding, transfer, liability to obligations, private
or public, and the modes of establishing titles thereto.   It
cannot bring the person of a non-resident within its limits—
its process goes not out beyond its borders—but it may de-
termine the extent of his title to real estate within its limits;
and for the purpose of such determination may provide any
reasonable methods of imparting notice.   The well-being of
every community requires that the title to real estate therein
shall be secure, and that there be convenient and certain
methods of determining any unsettled questions respecting it.
The duty of accomplishing this is local in its nature; it is

not a matter of national concern or vested in the general government; it remains with the state; and as this duty is one of the state, the manner of discharging it must be determined by the state, and no proceeding which it provides can be declared invalid, unless in conflict with some special inhibitions of the constitution, or against natural justice. So it has been held repeatedly that the procedure established by the state, in this respect, is binding upon the federal courts. In *United States* v. *Fox,* 94 *U. S.* 315, 320, it was said: "The power of the state to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted. It is an established principle of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated.' "

Freeman *v.* Alderson decided that while the costs of an action against a non-resident may be satisfied out of property within the jurisdiction of the court, no personal liability for them can be created against him. That was in respect to a personal demand. The case conflicts with nothing laid down in Arndt *v.* Griggs, and, in fact, is not cited in the latter case. Nor is the oft-cited case of *Pennoyer* v. *Neff,* 95 *U. S.* 714, at all at variance with the propositions laid down by the learned Vice Chancellor in Hill *v.* Henry, which were by him predicated upon Freeman *v.* Alderson and Arndt *v.* Griggs. In fact Pennoyer *v.* Neff is cited by Mr. Justice Brewer in Arndt *v.* Griggs as being in harmony with the decision then and there rendered.

Every sovereign state has control over property within its borders. The conditions of the ownership of real estate in a given country, whether the owner be citizen or alien, resident or non-resident, are subject to the laws of that state concerning the holding and transfer thereof, and of establishing title thereto. Partition, including sale in lieu of actual partition of lands in New Jersey, is within the doctrine stated; and

notice by publication, &c., to non-resident owners and persons believed to be dead, their heirs, devisees or personal representatives, under the provisions of the Chancery act, clothes our Court of Chancery with power to decree a partition or sale in lieu of partition, and make good title thereto, whether by decree for actual partition, or through a deed of conveyance made by a master in chancery in pursuance of a decree for sale.

The judgment appealed from will be affirmed, with costs.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ. 12.

*For reversal*—None.