E. B. KERLEE et al. v. M. A. CORPENING, Ex'r, et al.

*Presumption—Payment—Parties—Pleading.*

1. Where a clerk and master, in the years 1855 and 1858, received moneys arising from the sale of lands for partition, under a decree of the Court of Equity, but no demand was made or proceedings instituted by the parties entitled to receive them until the year 1880; *Held*, that the statutory presumption of payment or satisfaction must prevail.

2. Under an order of reference, by consent, containing directions to the referee to ascertain what sums the clerk and master had received, when received, and a further provision that "his decision of the law is open to revision in this and other Courts having jurisdiction," it is competent for the defendant to set up the presumption of payment from lapse of time, notwithstanding no answer was filed.

3. In all actions and proceedings demanding relief, the names of all the parties thereto should be properly set forth in the summons and pleadings. A general designation of them as "the heirs of M. C." is irregular and will not be tolerated.

(*Bradford* v. *Erwin*, 12 Ired., 291, cited and approved).

This is a CIVIL ACTION, which was tried at Spring Term, 1886, of McDOWELL Superior Court, before *Graves, Judge*, upon referee's report and exceptions.

The facts upon which the present action depends are those set out in the case of Curtis' heirs, reported in 82 N. C., 435, where a remedy was sought in a motion in the cause as originally constituted in the Court of Equity and re-instated on the docket of the Superior Court for that purpose. It is needless to restate them. The present proceeding, suggested in the opinion then delivered, is by an independent motion after notice, made under the provisions of *The Code*, sec. 1880. A demurrer to the complaint was put in, and not being acted on at Fall Term, 1883, an order of reference by consent, was made to M. H. Justice, "to take and state an account, showing:

(1). What sums of money, if any, came to the hands of C. L. S. Corpening, deceased, former clerk and master, as the proceeds of the sale of the lands of Moses Curtis, deceased, and when such sums came to his hands;

(2). What amount, if any, is now due the plaintiffs in this case in consequence of a failure to pay over to the parties in interest;

(3). What sums have been paid, when paid, if any, by the said Corpening in his life-time.

(4). The referee will pass upon all questions of fact and state his conclusions of law, and make his report to the next term; and it is agreed that the referee find his facts, and upon such facts give his opinion as to the law arising thereon, it being fully agreed that the decision of the law is open to revision in this and other Courts having jurisdiction."

It appears that lands belonging to Moses Curtis, and at his death devised to his wife for life, and to his children in remainder, were sold under a decree of the Court of Equity of McDowell county, and after confirmation and an allowance for selling, it was ordered, at Fall Term, 1855, that " the clerk and master loan the purchase money, after paying the costs in the case, *until the next term*, taking bond and security," &c.

William M. Carson, who had previously held the office of clerk and master, at the same term resigned it, and C. L. S. Corpening, testator of the defendant Martha, was appointed in his place, and continued to hold it until the Court to which it was attached ceased to exist, in 1868. Mary Curtis died in 1884, and the plaintiff, who had married a daughter, became her administrator. The testator of the defendant, as is averred in the pleadings, died in 1875.

The referee finds from the recitals in the deed from C L. S. Corpening, executed in his official capacity, by direction of the Court, to Thomas Hemphill, substituted in place of Thomas L. Hill, the original purchaser, whose surety he had become, and who had paid the debt, for portion of the lands

so sold, that the testator, Corpening, received on October 28th, 1855, the sum of $238, which, with interest thereon, he is charged with, in the account rendered. This sum is somewhat enlarged by an erroneous mode of computation, whereby the principal money is increased by an excess of interest above a small credit, which thus itself becomes an interest-bearing principal.

The defendants excepted to the report of the referee:

1. That it appeared that the clerk and master was ordered, at Fall Term, 1855, to loan out the money in question, and there was no evidence that he was ever afterwards directed to collect the money, or, at least, the principal.

2. That if the same was collected, there was, under the facts of this case, a presumption that it had been paid to the parties entitled, and there was no evidence to rebut the same.

The case coming on to be heard, upon the report and the exceptions thereto, filed by both parties, it was ordered that all the exceptions of the plaintiff be overruled; and it was further ordered that the first exception of the defendant be overruled, but the second exception of the defendant, to the effect that demand is presumed satisfied, discharged and abandoned, was sustained. It was further adjudged that the defendants have judgment for cost.

From this ruling, and the judgment rendered thereon, the plaintiffs appealed, and the only question presented is, as to the raising of the statutory presumption of payment upon the facts found.

*Messrs. W. H. Malone* and *John Devereux, Jr.,* for the plaintiffs.

No counsel for the defendants.

SMITH, C. J., (after stating the case as above). There passed into the hands of Corpening, by virtue of his office, in October, 1855, the sum of money mentioned, and he was

by the decree directed to lend it out on security until the succeeding term, but it does not appear that any such loan was made. He received from another purchaser, Spoke, on April 27th, 1858, the sum of $76, which on the next day he paid over to one Burgin, guardian of Mary Curtis, as the order apportioning the fund required; and again he paid the plaintiff, E. B. Kerlee, her succeeding guardian, $20, on November 3d, 1859; from what source received does not appear. There is no controversy in regard to these funds, since the referee only charges the clerk and master with his collection from Hemphill, and the facts are adverted to in connection with the long silence that has since intervened up to the institution of the present action, in September, 1880.

Now, the fund is traced into the clerk's hands, and in no manner is he acquitted of his direct responsibility to those entitled to it. If he misappropriated the money, or failed to lend it, and collect and pay over the annual interest, it would be a breach of his bond, and subject him to an action. It is from this long delay, and in explanation of it, that the statute deduces the inference of payment or satisfaction, and requires affirmative proof of non-payment. None such has, in this, been offered. The presumption, therefore, must prevail.

But it is argued that no such defence has been set up specifically, and this is true as to every defence, since no answer has been filed, unless what is termed a demurrer be so considered, and this it does not purport to be. But the consent reference, signed by counsel and "affirmed" by the Judge, sends the whole subject of controversy to the referee, and specially to determine what is due from the testator's estate to the plaintiffs, and payments partial or in full must be inquired into, to ascertain the result. The defendant has the same right to contest as the plaintiffs to establish their claims, and to avail themselves of the rules of evidence ap-

plicable thereto.   We concur, consequently, in the ruling of the Judge and his disposal of the cause.

We have proceeded to consider the appeal upon its merits because our conclusion is against the plaintiffs.   Had our opinion been different, we should have paused in making a decision until the parties interested in the fund are introduced into the cause.   But three only of the plaintiffs' names are found in the pleadings, the plaintiff Kerlee and wife in their right, and himself, as administrator of Mary Curtis, and the numerous others are described, without naming them, as "heirs at law of Moses Curtis, deceased," and this cannot be tolerated.   Who are the heirs at law of a deceased person, is a question of law.   *Bradford* v. *Erwin*, 12 Ired., 291; and the defect, after being pointed out in the demurrer, has not been removed.   Persons who demand money from others, must appear in the record in proper person, so that the defendant may know the money will go into the hands of rightful claimants, and he not be exposed to a suit for the same from others.   When the summons was issued there were no named plaintiffs, and only the comprehensive term, "heirs of Moses Curtis," was used to cover all who might have that relation toward the deceased, while these were designated by name when the complaint was filed.

There is no error, and the judgment below is affirmed.

No error.                                        Affirmed.