AMANDA M. HUBNER v. WILLIAM F. REICKHOFF, Executor, Appellant.

**Jurisdiction:** NOTICE OF PUBLICATION: *Idem sonans.* Where service, in an action for divorce against a non-resident, is by publication, and defendant makes default, and does not appear, the court cannot assume that the name "Keesel" in the published summons should be understood as "Keisel," defendant's real name, on the principle of *idem sonans;* and a decree based on such a service is void, and is subject to collateral attack.

KINNE, C. J., took no part.

*Appeal from Plymouth District Court.*—HON. F. R. GAYNOR, Judge.

WEDNESDAY, OCTOBER, 20, 1897.

WILLIAM REICKHOFF died, testate, on the eighth day of September, 1894, and the defendant is the executor of his will. The plaintiff presented a claim against the estate for damages based on a breach of promise of marriage. There is a denial by operation of law. The cause was submitted to a jury, that returned a finding for plaintiff, and the defendant appealed.—*Reversed.*

*Haines & Lyman, I. S. Struble,* and *G. W. Pitts* for appellant.

*Argo & McDuffie* for appellee.

GRANGER, J. — I.    It became necessary for the plaintiff, in order to show a valid marriage contract with William Reickhoff, to establish a divorce from Heindrick Keisel, to whom she had been married. She

had left him in Germany, and she presented to the court a certified copy of a decree from the district court of Nebraska in and for Douglas county, showing a divorce of Amanda M. Keisel from Heindrick Keisel, on the second day of September, 1888. The decree shows that jurisdiction was obtained by a service of notice by publication. In support of objections to the decree, as evidence, the defendant presented the record, from which proof of service must be found. The notice was addressed to Heindrick Keesel signed by "Amanda M. Keesel, by J. E. Smith, Attorney." The notice, as shown of record, required the defendant to appear and answer on or before December 26, 1888. It is argued by appellant as if it was 1887; and, as appellee makes no question as to the fact, we will consider 1887 as the proper date. It appears that the decree was entered, on default of the defendant, on the second day of November, 1888. The affidavit *for* publication was filed November 4, 1887, and that *of* publication October 13, 1888, showing the publication to have been from November 12 to December 3, 1887. The cause seems to have been continued from the return day, December 26, 1887, to November, 1888, before default or judgment was entered.

The court instructed the jury that the decree as offered was *prima facie* evidence of a divorce, and the decree was admitted in evidence against numerous objections as to its competency. The question of fact, as to the residence of plaintiff in Nebraska for such time as to give jurisdiction, the court submitted to the jury, with the instruction as to the *prima facie* effect of the decree. Among the objections urged then and now to the decree is the variance in name between that of plaintiff's husband, "Keisel," and that in the notice, "Keesel." It is urged that the variance is fatal to the decree. The following rule is invoked by appellee, found

in 16 Am. & Eng. Enc. Law, 122: "The absence of a definite set of rules for the spelling and pronunciation of the names of persons, and more especially of surnames, has led the court to the adoption of a principle known as the rule of *idem sonans*. This rule may be stated to be that absolute accuracy in spelling names is not required in legal documents or proceedings, either civil or criminal; that if the name as spelled in the document, though different from the correct spelling thereof, conveys to the ear, when pronounced according to the commonly accepted methods, a sound practically identical with the correct name as commonly pronounced, the name as thus given is a sufficient designation of the individual referred to, and no advantage can be taken of the clerical error." The author has collected a very extended list of names to which the rule has been applied, and another to which it is held not applicable. In some cases it has been held that the question of whether the rule is applicable is one of fact for the jury, and in others that the issue presents a question for the court. We have examined many, but not all, of the cases cited by the author, and from them no very definite rule can be gathered. Many of the cases are criminal, and the question is one of identity of the person charged with the person on trial, and many others present the question of the identity of the person in court, sought to be charged with an obligation or duty, with the one named in an instrument or document. It is, in such cases, a question whether the person against whom the adjudication is sought is the one represented by the name in the instrument. The reasonableness of the rule in such cases is apparent. An examination of the cases will show that the variance in orthography in names has been held fatal or otherwise, as the facts of the case would warrant, having in view safety in the application of the rule, and just results.

This case is unlike any that we have seen. It is con-
ceded that the name "Keisel" is pronounced by giving
to the diphthong the long sound of "i." If that pronun-
ciation is to obtain for the purpose of the case, the rule
of *idem sonans* could not be made to apply; and, so far
as can be known, it is a fact that it was so pronounced.
But, if the sound of long "e" should be permitted, ought
the rule to obtain in this case? The test suggests this
query: Where a service is by publication, which is
made conclusive because of a presumption that it comes
to the notice of the person, can the court assume as a
matter of law that the name "Keesel" would or should
be understood as "Keisel?" Can it be said to be a rule
of law that one of the latter name, on seeing the former
name in a notice, must or should understand it to mean
him? Let it be conceded that, if he were in court, the
identity of the person as the one intended might be
shown; but can it be assumed as a legal conclusion that
"Keesel" should be understood as "Keisel?" It is
hardly to be doubted that, while "Reed" could be held
to apply to "Read" or "Reade," with the person in court,
and an issue of identity made, a court would not assume,
in a publication service, that it meant, or should be
understood to mean, either of the others. The danger
of such a holding is apparent, because of the fact that
all three words are names of persons pronounced alike,
but of different orthography. Under some conditions
either name might be held to apply to either of the
persons, but not in a case where a name, not his own,
is published in a notice, to which he has not responded,
and the failure to respond is to be taken as a confession
of the truth of charges, as the record recites in the
divorce proceeding. The corrupt practices in divorce
proceedings could hardly be aided by the courts better
than to open the door for a variance between the actual
name of the defendant in the record and that in the
notice constituting the service, and giving the court

jurisdiction. It would seem as if the dissolution of the
marriage relation should depend on greater accuracy of
procedure than a variance involving such doubt and
uncertainty. The divorce case, on the face of the record,
is strange in the respect of the defendant's name, if not
somewhat suspicious. The plaintiff was a person of the
same name, and, of course, knew it well. In the pro-
ceedings the name appears as "Keïsel" and "Kiesel,"
which is a mere reversal of the letters of the diphthong;
but nowhere, except in the notice, does the name appear
as "Keesel," which is enough of a departure to indicate
another name. As we understand the record, the pub-
lished name is neither spelled nor pronounced like that
of the defendant in the divorce proceeding. But if pro-
nounced the same, and if under some circumstances,
such as we have suggested, the variance in spelling
might be held immaterial, we do not think the rule
can be made to apply in this case, where the defendant
was not in court, and there could have been no issue
or facts from which he should be held to answer to a
name not his own, or be adjudged in default. The
decree in evidence and the instructions of the court
were conclusive on the question, and the effect was to
hold, as a matter of law, that the person named in the
notice was the husband of the plaintiff, and we do not
think the conclusion was warranted. We think, with
this affirmative showing, the decree should have been
denied as evidence, on the ground that the person served
did not appear to be the person named in the pro-
ceeding.

This question being jurisdictional, it cannot well
be claimed that the decree in the divorce proceeding is
conclusive against collateral attack. If the substituted
service was not, as a legal conclusion, on Heindrick
Keisel, there was an entire want of jurisdiction, and
the decree is absolutely void, and may be attacked in

any proceeding in which it is sought to be made effective. 1 Black, Judgments, section 170; *Jordan v. Brown;* 71 Iowa, 421. It is not a case of a defective service of notice, but one of no notice on Heindrick Keisel. In such a case a foreign judgment is void, notwithstanding the recitals of a service. *Stone v. Skerry,* 31 Iowa 582. An entire want of notice is not a defective notice. *Haws v. Clark,* 37 Iowa, 355.

We are better satisfied with our conclusion because of the fact that the record is not an affirmative showing of good faith in the divorce proceeding in Nebraska. The court submitted to the jury the question of a timely residence of plaintiff in Nebraska, so as to give jurisdiction to that court; and the jury found there was such residence, but upon evidence of very doubtful sufficiency. Conceding it to be of such a nature as to sustain the finding, its doubtful character. in connection with the mode of service, which we hold to be insufficient, makes it a case with no equitable features to make the application of the rule as to service appear harsh or in any way unjust. Because of the conclusiveness of the question we have considered, it is not important that we consider others. The judgment is REVERSED.

KINNE, C. J., took no part.