(76 South. 453)

GILL v. MORE et al. (1 Div. 968.)

(Supreme Court of Alabama. June 14, 1917.)

1. EQUITY ⬤147 — PLEADING — MULTIFARIOUSNESS.

A bill seeking cancellation of a decree in so far as it referred to or affected and clouded complainants' title to certain lands was not multifarious in so far as it related to complainants' interest in the lands and the adjudication of the right or interest therein of complainant in the suit resulting in the decree sought to be set aside.

2. EQUITY ⬤415—DECREE—PARTIES—INDEFINITENESS.

Decree in suit to quiet title wherein the bill sought to make a named person a party defendant, if he was alive, and, if he was dead, sought by alternative averment to make parties

defendant his devisees, heirs, or next of kin, was to that extent indefinite as to the parties concluded by the decree.

**3. EQUITY ☞119—PARTIES—DEATH.**

If, when complainant filed his bill to quiet title, a person sought to be made a party defendant was dead, he was not made a party, however perfect the constructive notice given as to him.

**4. QUIETING TITLE ☞43—PARTIES—DEATH—HEIRS AS PARTIES.**

In suit to auiet title, if a person sought to be made a narty defendant was dead, his death should have been averred and proven, if his heirs or devisees were to be proper parties defendant, since without such definite averment of parties defendant a decree cannot be rendered against definite parties of the class of heirs or devisees.

**5. EQUITY ☞119, 136—PLEADING—JURISDICTION—NOTICE.**

The facts averred must be sufficient to extend jurisdiction to the tribunal assuming to exercise it over the res, and the notice, actual or constructive, must be sufficient to bring the reus within the jurisdiction, since judgment without jurisdiction over the person is of no legal avail.

**6. EQUITY ☞136—PLEADING—JURISDICTIONAL FACTS—LAW TO DETERMINE SUFFICIENCY.**

The sufficiency of averment of jurisdictional facts to enable the tribunal to hear and determine must be tested by the law in force within the state where the right of action is conferred and sought to be enforced.

**7. COURTS ☞97(6)—DECISIONS CONTROLLING—FEDERAL SUPREME COURT—DUE PROCESS—SERVICE OF PROCESS.**

The reasonableness of notice of suit to defendants, or of service of process by publication, the opportunity to become parties to such judicial proceeding affecting personal or property rights, and the right of appeal from an adverse decision, are questions governed by constructions by the United States Supreme Court of state statutes providing for due process of law under Const. U. S. Amend. 14.

**8. PROCESS ☞31—SERVICE BY PUBLICATION—MISSPELLING NAMES OF PARTIES DEFENDANT.**

Jurisdiction of parties defendant, where process is served by publication, is not to be determined alone by orthography or by the rule of idem sonans, but by the fact of knowledge of the pendency of the cause, or by a published or posted notice thereof, from which the law imputes such knowledge to defendants.

**9. EQUITY ☞132—PROCEEDINGS AGAINST UNKNOWN DEFENDANTS—STATUTE.**

Under Code 1907, § 3106, providing that, where it is necessary to make any persons defendant to a bill, and the names of all or any are unknown, and cannot be ascertained on diligent inquiry, and plaintiff annexes an affidavit that the names of such persons are unknown, etc., proceedings may be had and a decree rendered against them without naming them, unknown devisees or heirs at law were not made parties to a bill to quiet title against decedent if alive, or against them, in the alternative, if he was dead, and were not bound by the decree, nor precluded from later assertion of their property rights to the lands in question, where no affidavit was annexed to the bill.

**10. JUDGMENT ☞460(1)—VACATION IN EQUITY—PLEADING.**

Complainants, seeking to set aside decree in suit to quiet title, by their original bill must point out the failure of jurisdiction of the court as to the parties and subject-matter to render the questioned decree, must fully explain their freedom from negligence in their failure to

make defense in the former suit, show diligence in their moving for vacation of decree, and allege a defense good in law to defeat former complainant's title to the land.

**11. JUDGMENT ☞17(3)—PROCESS TO SUPPORT—SERVICE BY PUBLICATION—PERSONAL JUDGMENT.**

A personal judgment is without validity if it be rendered by a state court in an action upon a money demand against a nonresident proceeded against by publication, but not personally served with process within the state, and not appearing, and no validity is imparted to such a judgment by the fact that defendant has, when action is commenced, property within the state on which levy can be made under the judgment.

**12. JUDGMENT ☞17(3)—TRESPASS TO TRY TITLE—JUDGMENT FOR COSTS OUT OF SHARE OF NONRESIDENT.**

A judgment for costs in an action of trespass to try title, though a suit quasi in rem, cannot be made out of the undivided share of a nonresident; he not being personally served, and not appearing.

**13. JUDGMENT ☞17(1)—PROCESS TO SUPPORT—SUITS IN REM OR QUASI IN REM—PERSONAL SERVICE OR APPEARANCE.**

In suits strictly rem, where the property itself is proceeded against, and in suits quasi in rem, where the suit is against the person in respect of the res, as in a suit for partition, sale, or other disposition of defendant's property within the jurisdiction to satisfy plaintiff's demand by enforcing a lien upon it, personal service within the jurisdiction or appearance is not necessary, but the decree cannot extend beyond the property in controversy.

**14. JUDGMENT ☞17(1)—DENIAL OF RES IN DEFENDANT—DECREE OPERATING IN PERSONAM, ETC.**

Where an action is based upon a denial of any res in defendant, if the decree sought be a decree operating in personam only, to be made under the ordinary jurisdiction of equity, as that defendant make or cancel a conveyance, it can only be made after personal service within the jurisdiction or after appearance, but if the decree be taken under a statute which authorizes the court to determine the question of title, and to decree it to the party entitled, it binds without such service or appearance, if the statute has provided a reasonable method of imparting notice.

**15. QUIETING TITLE ☞1—STATUTE—EXTENSION.**

Code 1907, §§ 5443–5445, providing for action to quiet title, and enlarging the jurisdiction of the chancery court, taken from New Jersey, cannot be extended beyond its terms.

**16. QUIETING TITLE ☞30(3)—INDEFINITE PERSONS—POWER OF LEGISLATURE.**

The state Legislature, in prescribing a policy and procedure for the perfecting of title to lands, within the state, has the authority to make the statutes comprehensive as to indefinite persons and classes necessary to be made parties defendant.

**17. PROCESS ☞152—SERVICE ON NONRESIDENT BY PUBLICATION.**

The federal rule is that, where a nonresident was sought to be made a party defendant by publication, and his name was incorrectly indicated in the notice, which did not actually come to him, he had the right to rely on the rule of strictness in the service of process by publication and in the giving of constructive notice to nonresident defendants.

**18. QUIETING TITLE ☞31—DUE PROCESS—SERVICE BY PUBLICATION AND DECREE.**

Code 1907, § 5443, providing the action to quiet title, did not authorize decree in a proceeding to quiet title to land on notice by publica-

---

tion given to a named person, "or, if dead, his devisees, heirs, and next of kin," and the indefinite and unusual decree rendered on such attempted perfecting of service by publication was void.

19. CONSTITUTIONAL LAW ⬤⟿309(1)—QUIETING TITLE ⬤⟿30(3)—PARTIES—DUTY OF COMPLAINANT—DUE PROCESS OF LAW.

Code 1907, § 3106, respecting publication and proceedings against defendants whose names are unknown, and section 5443, providing the action to quiet title, which statutes provide for constructive notice by publication, imposed the duty of diligent inquiry on complainant in suit to quiet title for the parties in adverse interest to be made respondents, and he was bound to exercise reasonable diligence to ascertain the names and residences of all such parties having or claiming an interest in the lands, and to make them parties respondent by perfecting service as required under the statutes and by due process of law.

20. NOTICE ⬤⟿5—CONSTRUCTIVE NOTICE—MEANS OF KNOWLEDGE.

The means of knowledge is the equivalent of knowledge, a rule applying when the circumstances of the case impose the duty of a reasonable inquiry, and even where it is not required by the express mandate of the statute.

21. PROCESS ⬤⟿87—PROCEEDINGS QUASI IN REM—SUBSTITUTED SERVICE—UNKNOWN CLAIMANTS.

So far as substituted service on a class of unknown claimant is permitted at all under the Constitution in proceedings quasi in rem, it rests upon the ground of necessity, which will not justify the omission of personal service upon all who could with reasonable diligence be ascertained and found.

22. CONSTITUTIONAL LAW ⬤⟿309(1)—DUE PROCESS—SERVICE BY PUBLICATION.

Code 1907, § 3106, providing for perfecting service by publication against nonresident defendants, such as those whose property rights in lands are being dealt with or sought to be concluded by judicial proceedings under section 5443, providing the action to quiet title, construed to impose on complainant in an action to quiet title the affirmative duty to make a bona fide and reasonably diligent inquiry to ascertain the names and residences of all persons claiming or owning an adverse interest, affords due process of law to nonresident defendants.

23. ACTION ⬤⟿1—ELEMENTS OF CAUSE OF ACTION—PARTIES.

There must be parties to a cause of action; they being jurisdictional.

24. JUDGMENT ⬤⟿456(2)—LIMITATION OF ACTIONS—BILL TO VACATE JUDGMENT—STATUTE.

The rule that the limitation of Code 1907, § 3178, prescribing when application to file bills of review must be made, though applying to a bill to set aside a decree obtained by fraud, has no application to nonresident strangers to the proceeding.

25. LIMITATION OF ACTIONS ⬤⟿37(3)—SUITS TO VACATE DECREE OBTAINED BY FRAUD—STATUTE.

By Code 1907, § 4852, original suits in equity may be brought within one year after discovery of the fraud to vacate a decree obtained by fraud.

Appeal from Law and Equity Court, Mobile County; Saffold Berney, Judge.

Bill by Anna S. More and another against Harry Gill to set aside, cancel, and annul the decree in the case of Harry Gill v. Abraham G. More et al. in so far as said decree refers to or in any manner affects or relates to and clouds orator's title to certain lands described. From a decree for complainants, respondent appeals. Affirmed.

Gordon & Edington, of Mobile, for appellant. L. H. & E. W. Faith, of Mobile, for appellees.

THOMAS, J. In the instant case the decree is assailed for the want of jurisdiction. The grounds on which it is challenged are: (1) That the complainant in the other suit, Gill, perpetrated a fraud on the chancery court in falsely alleging that at the time of the filing of his bill in the suit in which the questioned decree was rendered he was in the peaceable possession of said tracts of land, and that he owned the same; (2) that after failure to make these complainants parties respondent the court had no jurisdiction to render a binding decree affecting their rights in the real property described.

Is the present bill multifarious, in that it seeks cancellation of the decree of January 25, 1912, in the case of Harry Gill v. Abraham G. More, in so far as it relates to complainants' interest in the lands in question and the adjudication of Gill's right or interest therein?

The case relied on by appellant is Gordon, Adm'r, v. Ross, 63 Ala. 363, where, to prevent surprise and confusion in making defense, which would result from blending in one suit distinct causes of action, the rule was declared that each "aspect or alternative" must entitle the complainant to the same relief; that is to say, must entitle the complainant to relief the same "in kind if not in degree"; so that, if the bill be confessed, in decreeing the relief on one state of facts, the court would also grant the relief appropriate to the alternate state of facts. Code 1907, § 3095; Curry v. Peebles, 83 Ala. 225, 3 South. 622; Globe Co. v. Thacher, 87 Ala. 458, 6 South. 366; Bentley v. Barnes, 155 Ala. 659, 47 South. 159; Bellevue Cem. Co. v. McEvers, 168 Ala. 535, 53 South. 272; Dixie Grain Co. v. Quinn, 181 Ala. 208, 61 South. 886; Kant v. A., B. & A. R. Co., 189 Ala. 48, 66 South. 598; Manegold v. Beavan, 189 Ala. 241, 66 South. 448; Wheat v. Wheat, 190 Ala. 461, 67 South. 417; Webb v. Butler, 192 Ala. 287, 68 South. 369, Ann. Cas. 1916D, 815; Stewart v. Snider, 72 South. 409.[1]

[1] The demurrer on the ground of multifariousness was properly overruled. In the perfection of service by publication (Code, §§ 3106, 5308) in a proceeding to quiet title (sections 5443–5449), were these complainants made parties respondent, and were their property rights concluded, in the suit of Gill v. More et al., No. 444? The pertinent averments on this point of the original bill filed in the instant case are:

"Your oratrices further charge the fact to be that they nor either of them was a party to

said suit filed by said Harry Gill aforesaid; that neither of them was ever served with any process whatever issuing from this honorable court in said suit; that no notice by proper publication was ever given to them or either of them of said suit, and as a matter of fact your oratrices charge the truth to be that neither one of them knew of the existence of said suit at any time while the same was pending, and never heard until in January, 1916, that there was such suit filed by said Harry Gill in this court. * * * "Oratrices further charge that in the third section of his said bill of complaint the said Harry Gill sets out the names of the defendants to his said suit, but the names of your oratrices do not appear therein or anywhere else in said bill, nor is the name of their father, Abraham G. More, mentioned anywhere in said bill. The only pretense that your oratrices were parties to said suit arises out of an inference or supposition which the said Harry Gill would have the court to indulge, that because that in the third section of his bill this statement is made, 'Abraham G. *Moore,* or, if dead, his devisees, heirs, and next of kin * * * [naming others], all of whom are made defendants to this bill of complaint, claim or are reputed to claim the interests in said land as set out and alleged in paragraphs first and second of this bill,' and also this other statement made in the fourth section of the bill, to wit, 'Complainant further shows that he has made and caused to be made diligent search and inquiry to ascertain the names, ages, and residences of the devisees, heirs, and next of kin of said Abraham G. *Moore,* and also to ascertain whether said Abraham G. *Moore* is living or dead, and where he resides, if living, but after diligent inquiry has been unable to ascertain any of these facts,' and also this other statement in the bill, in the prayer for process, to wit, "That service by publication be had upon said Abraham G. *Moore,* or, if dead, his devisees, heirs, and next of kin, * * *' your oratrices are and were the identical persons made defendants to said bill under said statements, although their father, Abraham G. More, and your oratrices have never claimed said lands under the name or appellation of 'Moore.' "

As to what the bill in the former suit contained in regard to the parties defendant, it is pertinent to observe that it failed to positively aver that the said Abraham G. Moore was dead. On the contrary, it alleged that diligent inquiry had failed to disclose that fact. Unless he was so averred and shown to be dead, presumably he was then living; and, being in life, he could have no heirs or devisees to be made parties to a suit affecting his lands in this state. If living, he was sought to be made a party defendant; if dead, by alternative averment, his "devisees, heirs, or next of kin" were sought to be made parties respondent.

[2] The decree rendered on such indefinite averment as to the parties respondent, following the language of the bill, was to that extent indefinite as to the parties concluded by the decree. This court has held that, if a party to the proceeding be dead at the time of the rendition of judgment against him, the judgment is void, notwithstanding the averment of the necessary jurisdictional facts (Whitlow v. Echols, 78 Ala. 206, 210; Johnson v. Johnson, 40 Ala. 247, 253), and also that, where a given party is not dead, but is averred so to be, the letters of administration granted and the administration had on such

an one's estate are void (Duncan & Hooper v. Stewart, 25 Ala. 408, 60 Am. Dec. 527).

[3, 4] If, when Gill filed his bill to quiet title, Abraham G. More was dead, More was not made a party, however perfect the constructive notice given as to him. If his heirs or devisees were to be proper parties respondent, the death of the ancestor should have been averred and proven. Without such definite averment of parties respondent, a decree cannot be rendered against definite parties of the class of heirs or devisees. Harris v. Johnson, 176 Ala. 445, 58 South. 426; Smith v. Murphy, 58 Ala. 630; Winn v. Fitzwater, 151 Ala. 171, 44 South. 97.

[5, 6] It is fundamental that the facts averred must be sufficient to extend jurisdiction to the tribunal assuming to exercise it over the res, and that the notice, actual or constructive, must be sufficient to bring within that jurisdiction the reus. For, as Chief Justice Beasley observed, judgment without jurisdiction over the person "is of no legal avail at home or abroad." Elsasser v. Haines, 52 N. J. Law, 10, 15, 18 Atl. 1095, 1097. The sufficiency of averment of jurisdictional facts to enable the tribunal to hear and determine must be tested by the law of force within the state where the right of action is conferred and sought to be enforced.

[7] The reasonableness of the prescribed notice, or of service of process by publication and the opportunity to become parties to such judicial proceeding affecting personal or property rights, and the right of appeal from an adverse decision thereon, are questions governed by the constructions by the Supreme Court of the United States of such state statutes providing for due process of law under the Fourteenth Amendment to the federal Constitution. In passing it may be remarked that due process of law in matters of taxation and local assessment should not be confused with that in judicial proceedings between private parties. Gudenrath v. City of Huntsville, 194 Ala. 568, 69 South. 629; 4 Dillon, Mun. Corp. § 1365, pp. 2365, 2366.

Appellees (complainants below), in addition to averring fraud on the jurisdiction of the chancery court in the former suit as to the res, point to the fact that they had no knowledge of the pendency of said suit to quiet title (Gill v. Moore et al.), and contend that the published notice thereof was ineffectual as against them: (1) Because the name of their ancestor was misspelled; and (2) because they were not properly made parties as an unknown class.

[8] As to the misspelling of the name of the deceased father of the complainants, see the recognized differences in the name of "Moore" and "More" given in the Century and Standard Dictionaries, volumes of proper names. Be that as it may we shall see that jurisdiction of parties defendant, where process is served by publication, is not determined alone by orthography, or by the rule

of idem sonans, but by the fact of knowledge of the pendency of the cause, or by a published or posted notice thereof, from which the law imputes that knowledge to defendants.

Of constructive notice generally held sufficient or not sufficient to bind innocent third parties under other statutes, the decisions thereon may aid somewhat in determining whether the notice sought to be given these complainants (the nonresident defendants in the former suit) was reasonable and sufficient as basis on which to deprive them of their property in question, by said decree. Our court has held that a description in a recorded mortgage may be good as between the parties, and yet insufficient to deprive a purchaser from the mortgagor of his bona fide right to the mortgaged property, acquired without notice (Stickney v. Dunaway, 169 Ala. 464, 53 South. 770); that if property conveyed is not so described as to identify it with reasonable certainty, there is nothing to put the searcher of the record proper on inquiry, and such record will not give constructive notice of the conveyance (Hickey v. McDonald Bros., 160 Ala. 300, 48 South. 1031); that the name of "A. W. Dixon" was not notice that the mortgage so recorded was executed by "J. W. Dixon" (Johnson v. Wilson & Co., 137 Ala. 468, 34 South. 392, 97 Am. St. Rep. 52); that a record disclosing one "McCinney" as the mortgagor was not notice to a purchaser of the mortgaged property from "McKinney" (Grimmer v. Nolen, 146 Ala. 466, 40 South. 97); that the record of a mortgage signed "W. H. McDonald" is not constructive notice that the same was executed by "W. N. McDonald" (First National Bank of Opp v. Hacoda Mercantile Co., 169 Ala. 476, 53 South. 802, 32 L. R. A. [N. S.] 243, Ann. Cas. 1912B, 599); that the registration of a prior mortgage purporting to have been executed by "J. A. Johnson" did not impute constructive notice to a subsequent mortgagee of one who signed the name as "J. T. Johnson" (Ozark City Bank v. Planters' & Merchants' Bank. 73 South. 722). And it was held similarly in a case involving the erroneous recordation of a judgment against "John H. Gilbrath," instead of "John A. Gilbreath." Lature v. Little et al., 6 Ala. App. 278, 60 South. 474.

In the names of parties to a suit initials have generally been held insufficient. Comer v. Jackson, 50 Ala. 384; Wiebbold v. Hermann, 2 Mont. 609; Bates' Case, 7 Ark. 394, 46 Am. Dec. 293; Enewold's Case, 39 Neb. 59, 57 N. W. 765, 22 L. R. A. 573, 42 Am. St. Rep. 557; Herf's Case, 10, Ohio, 263; Garwood's Case, 38 Cal. 216, 230; Kerlee v. Corpening, 97 N. C. 330, 2 S. E. 664. See, also, Steph. Pl. § 167; 4 Ency. Pl. & Pr. 492, 493; Wills' Gould on Pl. (6th Ed.) pp. 239, 241. It has been stated that service by publication is to provide notice "to the eye, and not to the ear" (Heil's Appeal, 40 Pa, 453, 80 Am. Dec. 590); and it was held that "published notice

to "John O'Shea" was not effective to perfect service on "John O'Shea" (Clary v. O'Shea, 72 Minn. 105, 75 N. W. 115, 71 Am. St. Rep. 465). And similarly it was held that publication of a summons to "George H. Leslie" conferred no jurisdiction over "George W. Leslie" (D'Autremont v. Anderson Iron Co., 104 Minn. 165, 116 N. W. 357, 17 L. R. A. [N. S.] 236, 124 Am. St. Rep. 615, 15 Ann. Cas. 114); and that notice to J. Strimple was not sufficient to bring in Jacob Strimple (Steinmann v. Strimple, 29 Mo. App. 485.

In Hubner v. Reickhoff, 103 Iowa, 368, 72 N. W. 540, 64 Am. St. Rep. 191, it was declared that service by publication of notice in a divorce proceeding to "Heindrich Keisel" was not notice to "Heindrick Keesel." The court said:

"It is hardly to be doubted that, while 'Reed' could be held to apply to 'Read,' or 'Reade,' with the person in court, and an issue of identity made, a court would not assume, on a publication service, that it meant, or should be understood to mean, either of the others. The danger of such a holding is apparent, because of the fact that all three words are names of persons pronounced alike, but of different orthography." 103 Iowa, 371, 72 N. W. 541, 64 Am. St. Rep. 191.

So in Buchanan v. Edmisten, 1 Neb. (Unof.) 429, 95 N. W. 620, where publication was made against "O. P. Buchanan," and the true name of the person intended to be proceeded against was "Peter O. Buchanan." The court held the misnomer a substantial defect, and all proceedings had thereunder void for want of jurisdiction of necessary parties.

In Fanning v. Krapfl, 61 Iowa, 417, 14 N. W. 727, 16 N. W. 293, where the defendant's name was "T. P. B. Hopkins," and the service by publication was addressed to "P. T. B. Hopkins," the holding was that the court acquired no jurisdiction, as the published name differed substantially from the true name, making the notice of no effect to the true defendant.

That notice by publication is a proceeding against the name, and that to give such notice as the service of the writ imparts the name should be fully and correctly set forth, and that if the name is not so set forth the notice is ineffectual as a notice, these cases are authorities: Hirsh v. Weisberger, 44 Mo. App. 506; Herbage v. McKee, 82 Neb. 354, 117 N. W. 706; Butler v. Smith, 84 Neb. 78, 120 N. W. 1106, 28 L. R. A. (N. S.) 436; Skelton v. Sackett, 91 Mo. 377, 3 S. W. 874; Illinois Central R. R. Co. v. Hasenwinkle, 232 Ill. 224, 83 N. E. 815, 15 L. R. A. (N. S.) 129.

My Brothers Mr. Chief Justice ANDERSON and Justices MAYFIELD and SOMERVILLE do not wish to be concluded on the question of differing orthography (in this case) in giving notice by publication to complainants' ancestor. They agree with the writer, however, that any views reserved by them on this point would not, for reasons hereinafter stated, change the result.

Whatever may have been the effect of the

² 197 Ala. 427.

misspelling of the name of complainants' ancestor ("More" or "Moore") in the service or attempted service of process by publication in the suit of Gill v. Moore, the averments of this bill show a failure to comply with the statutory provisions for making parties defendants to a bill in chancery to quiet title and for bringing in nonresidents by publication when their names are unknown to the plaintiff and cannot be ascertained by diligent inquiry. Code 1907, § 3106.

In a probate court proceeding for the sale of real property for distribution among joint owners (Bingham v. Jones, 84 Ala. 202, 4 South. 409), the petition made a strong showing of diligence to ascertain the names and residences of the numerous heirs at law to be affected by the application. It contained the following averments:

"The children of Mary Little, deceased, who was also a daughter of the said Margaret (Charlotte) Cowper, and a niece of the said Eliza E. Chase (intestate), deceased, the names, residences and ages of said children are unknown to petitioner. * * * 'Petitioner further represents that the distributees of said estate, described in his said amended petition as the children of Mary Little, deceased, whose names and residences and ages are unknown, * * * is a full statement of all the knowledge petitioner has of such persons, or has been able to ascertain.' This is all the petition contains in reference to the children of Mary Little."

It was pointed out by demurrer that "with reference to the children of Mary Little, deceased," the petition failed to set forth the names of these heirs of said Little as required by section 3433 of the Code of 1886. this statute being the same as section 3106 of the Code of 1907, under which the process in the instant case was sought to be perfected by publication. Judge Stone said:

"There is a statutory provision for making parties defendant to a bill in chancery, and for bringing them in for publication, when their names are unknown to the plaintiff, and cannot be ascertained on diligent inquiry. Code 1886, § 3433. But this right is purely statutory, and to bring a case within its influence, its substantial requirements must be conformed to. City of Opelika v. Daniel, 59 Ala. 211; Bell v. Hall, 76 Ala. 546. There is not enough in the petition to bring in these unknown heirs, if the suit had been in the chancery. * * * *"

Where parties were described, not by name, but as "supervisors," it was held that the proceeding by them was ineffectual. Supervisor of the Town of Galway v. Stimson, 4 Hill (N. Y.) 136.

In Kerlee v. Corpening, supra, the court said of parties plaintiff and others that:

The "numerous others are described, without naming them, as 'heirs at law of Moses Curtis, deceased,' and this cannot be tolerated. Who are the heirs at law of a deceased person is a question of law. Bradford v. Erwin, 34 N. C. (12 Ired.) 291."

[9, 10] Under the construction of the statute in question (section 3106, Code) given by Judge Stone in Bingham v. Jones, supra, it would appear that the unknown devisees or heirs at law of the decedent, More or Moore, as the case may be, were not made parties to Gill's bill to quiet title, and were not bound by said decree, nor precluded in the present assertion of their property rights to the lands in question. Not only do complainants aver failure of jurisdiction of the subject-matter and of the persons sought to be bound, but they have a good defense to defeat at law Gill's claim to the land as against their title. This defense is specifically set out. Complainants show title to the land in themselves and their right to the possession thereof at all times since the death of their ancestor and predecessor in title to the present time; that they have continuously assessed the lands in their name, and paid the taxes thereon. The court is thus put into the possession of facts whereon the sufficiency of their defense against the judgment may be adjudicated, and complainants' right to the land, as against Gill or any one else, established. That is to say, appellees, by their original bill, have not only pointed out the failure of jurisdiction of the court, as to the parties and the subject-matter to render the questioned decree, but fully explain their freedom from negligence in their failure to make defense in said former suit, show diligence in their moving for the vacation of said decree, and allege a defense good in law to defeat Gill's title to the land. Such are the requirements under our decisions. Dunklin v. Wilson, 64 Ala. 162; Rice v. Tobias, 83 Ala. 348, 3 South. 670; Raisin Fert. Co. v. McKenna, 114 Ala. 274, 21 South. 816; McDonald v. Cawhorn, 152 Ala. 357, 44 South. 395; Evans v. Wilhite, 167 Ala. 587, 52 South. 845; Todd v. Leslie, 171 Ala. 624, 55 South. 174; Hauser v. Foley & Co., 190 Ala. 437, 67 South. 252.

[11-14] The federal question raised by the bill—the sufficiency of notice as a service of process by publication, and the binding force of the decree on nonresident owners of the land sought to be dealt with—must be tested by the decisions of the Supreme Court of the United States. The following propositions are established: (1) A personal judgment is without validity if it be rendered by a state court in an action upon a money demand against a nonresident proceeded against by publication, but not personally served with process within the state and not appearing. (2) No validity is imparted to such a judgment by the fact that the defendant has at the time the action is commenced property within the state upon which a levy can be made under the judgment; that no suit can be maintained on such a judgment in the same, or in other, courts, nor can it be used as evidence against the defendant in any other proceeding not affecting the attached property. Cooper v. Reynolds, 10 Wall. 308, 318, 19 L. Ed. 931; Freeman v. Alderson, 119 U. S. 185, 189, 7 Sup. Ct. 165, 30 L. Ed. 372; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. (3) A judgment for costs in an action of trespass to try title, although

it is a suit quasi in rem, cannot be made out of the undivided share of the nonresident; he not being personally served and not appearing. Freeman v. Alderson, supra. (4) In suits strictly in rem, where the property itself is proceeded against, treated as having done the wrong or having been the instrument of its commission, and in suits quasi in rem, that is, where the suit is against the person in respect of the res, where, for example, it has for its object partition, or the sale or other disposition of defendant's property within the jurisdiction, to satisfy plaintiff's demand by enforcing a lien upon it, personal service within the jurisdiction or appearance is not necessary. It is well established, however, that the decree cannot extend beyond the property in controversy. Freeman v. Alderson, supra; Hill v. Henry, 66 N. J. Eq. 150, 154, 57 Atl. 554; Andrews v. Guayaquil Co., 69 N. J. Eq. 211, 60 Atl. 568; Wilson v. Amer. Palace Car Co., 65 N. J. Eq. 730, 55 Atl. 997. (5) Both of the classes last mentioned have this in common: The res, the subject of the controversy, is within the jurisdiction, and it is because it is so that the court is able to affect defendant's interest in it. There is a further case, illustrated, so far, by proceeding to quiet title. The case is based upon a denial of any res in the defendant. In this class of cases the Supreme Court has taken a distinction. If the decree sought to be a decree operating in personam only, to be made under the ordinary jurisdiction of equity, a decree, for instance, that the defendant make or cancel a conveyance, that defendant be restrained from asserting his claim, it can only be made after personal service within the jurisdiction or after appearance. Hart v. Sansom, 110 U. S. 151, 3 Sup. Ct. 586, 28 L. Ed. 101. But if the decree be taken under a statute which authorizes the court to determine the question of title and to decree it to the party entitled, then it binds without such service or appearance if the statute has provided "a reasonable method of imparting notice." Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918; Andrews v. Guayaquil Co., supra; Hill v. Henry, supra.

[15] The Alabama statute providing the action to quiet title and enlarging the jurisdiction of the chancery court was taken from New Jersey, and, as was pointed out by the courts of that state, cannot be extended beyond its terms. Haley v. Goodheart, 58 N. J. Eq. 368, 44 Atl. 193; American Dock Co. v. Trustees of Public School, 37 N. J. Eq. 266, 271. The right to quiet title conferred by our statute is in any person: (1) When he is in peaceable possession of the land, whether actual or constructive, claiming to own the same in his own right, or in a representative capacity; (2) when his claim is denied or disputed or when any other person claims or is reputed to own the same or any part thereof; and (3) no suit is pending to enforce or test the validity of such title or claim. It is expressly provided that:

"Such person or his personal representative or guardian so in possession may bring and maintain a suit in equity to settle the title to such lands, and to clear up all doubts or disputes concerning the same."

Thus are specifically declared the jurisdictional facts on which depends the right to deal with the res. Code, § 5443.

The bill is required to describe with certainty the land, and to allege the possession and ownership of the complainant, together with the fact that the "defendant claims or is reputed to claim some right, title, or interest in or incumbrance" thereon, and must call upon him to set forth and specify his title, claim, interest, or incumbrance. Code § 5444. "The defendant shall answer" as to the nature and extent and sources of his claim, interest, title, or incumbrance. Code, § 5445. A trial by jury is provided; and on such trial the issue to be determined by the verdict, as declared by the statute, is "whether the defendant has any right, title, or interest in or incumbrance upon such lands or any part thereof," what it is and its extent, and the decree is "conclusive upon all the parties to the suit." Section 5446. It is further provided that no decree for costs shall be had against a defendant "who suffers a decree pro confesso against him, or who in his answer disclaims all title to, interest in, or incumbrance on such lands." Section 5448. It is to be noted that no special provision is made in chapter 127 of the Code, pp. 1226, 1229, for service by publication on nonresident respondents in such action to quiet title. The provision for the notice, or service of process by publication on nonresident defendants in such suits must be found in sections 3106 and 5308 of the Code of 1907.

[16] It would appear that these statutory provisions conferring jurisdiction on a court of equity to clear title to lands primarily provided a procedure against definite parties defendant, persons having an actual existence, rather than against an indefinite class whose very existence is uncertain and speculative. There can be little doubt that the state Legislature, in prescribing a policy and procedure for the perfecting of titles to lands within the state, has the authority to make the statutes comprehensive as to indefinite persons or classes necessary to be made parties defendant. This finds illustration in the California Earthquake Act, construed in American Land Co. v. Zeiss, 219 U. S. 47, 31 Sup. Ct. 200, 55 L. Ed. 82; and the "Burnt Records Act" of Illinois (Gage v. Caraher, 125 Ill. 447, 17 N. E. 777; Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554, 33 L. Ed. 909; Bertrand v. Taylor, 87 Ill. 235), where unknown claimants were brought in by publication under the designation, "To whom it may concern." The Alabama statute, however, is not so broad as either the California or

the Illinois statute held sufficient by the Supreme Court of the United States.

Adverting to the statute of California construed in the Zeiss Case, it is to be noted that it provided that the action to quiet title must be commenced by filing a verified complaint against the defendants as "all persons claiming any interest in or lien upon the real property," or any part thereof, described in the complaint; that it was also provided that in such suits service may be perfected by publication against unknown parties in interest.

The Circuit Court of Appeals certified to the Supreme Court of the United States for decision the question of the validity of such statute, whether it was in violation of the Fourteenth Amendment, whether the decree rendered on service sought to be perfected thereunder ·by publication as to such unknown nonresident defendants was depriving them of an interest in lands without due process of law. Chief Justice White declared that the general welfare of society is involved in the security of title to land, that such subjects are within the police power of the state, and that in its exercise the state may require parties owning and in possession of land, resident ·or nonresident, to establish titles thereto by judicial proceedings before its constituted tribunals, and that notice thereof to such nonresident defendants may be given by publication. It was recited, in justification of the holding, that after such disaster of earthquake and fire as befell San Francisco in 1906, in which many of the public records of registered titles to real estate were destroyed, the state might remedy the confusion and uncertainty arising from such catastrophe by authorized procedure under the statute in question. It was further pointed out that undisclosed and unknown claimants to lands were as dangerous to the stability of ·real estate titles as any other class of claimants, and that unknown nonresidents brought in by publication in such actions were not, by decree on such constructive notice, deprived of their property without due process of law "if compelled to establish their titles by judicial proceedings before a properly constituted tribunal, on adequate published notice, if given an opportunity to be heard and properly safeguarded and protected in case of fraud." The court said:

"On the contrary, we think the statute manifests the careful purpose of the Legislature to provide every reasonable safeguard for the protection of the rights of unknown claimants and to give such notice as under the circumstances would be reasonably likely to bring the fact of the pendency and the purpose of the proceeding to the attention of those interested. * * * The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals. * * * Due process requires that the court which assumes to determine the rights of parties shall have jurisdiction, * * * and that there shall be notice and opportunity for hearing given the parties. * * * Subject to these two fundamental conditions, which seem to be universally prescribed in all systems of law established by civilized countries, this court has up to this time sustained all state laws, statutory or judicially declared, regulating procedure, evidence, and methods of trial, and held them to be consistent with due process of law. Twining v. New Jersey, 211 U. S. 78 [29 Sup. Ct. 14, 53 L. Ed. 97]. * * * As there is no claim that fraud, actual or constructive, was employed by Zeiss in obtaining the judgment complained of, and the proceedings conformed to the California statute, the considerations previously stated dispose of this question."

The latest case discussing the question of due process under a state statute authorizing the perfecting of service on a nonresident defendant by publication, in an action for a sale for partition among joint owners of real property (where, by the way, the name of the nonresident defendant was misspelled in the notice), is Grannis v. Ordean, 234 U. S. 385, 394, 34 Sup. Ct. 779, 783 (58 L. Ed. 1363). The court said of the service of such process:

"The logical result is that a state, through its courts, may proceed to judgment respecting the ownership of lands within its limits, upon constructive notice to the parties concerned who reside beyond the reach of process. That this constitutes 'due process' within the meaning of the Fourteenth Amendment was recognized in Pennoyer v. Neff, 95 U. S. 714 [24 L. Ed. 565] and is no longer open to question. * * * The 'due process of law' clause, however, does not impose an unattainable standard of accuracy. If a defendant within the jurisdiction is served personally with process in which his name is misspelled, he cannot safely ignore it on account of the misnomer."

The rules established by the great weight of authority are recognized as: (1) That if a person is sued and personally served by a wrong name and he fails to appear and plead the misnomer in abatement, the judgment binds him (Veasey v. Brigman, 93 Ala. 548, 9 South. 728, 13 L. R. A. 541; Snelgrove v. Bank, 5 Ala. 295; Morrow v. Norvell, etc., Co., 165 Ala. 331, 51 South. 766; Stephens v. Cox, 124 Ala. 448, 26 South. 981); (2) if a nonresident defendant is served by publication, where the name is a principal means of identifying the person concerned, "the general rule * * * tends to strictness" (Galpin v. Page, 18 Wall. 350, 369, 373, 21 L. Ed. 959; Priest v. Las Vegas, 232 U. S. 604, 34 Sup. Ct. 443, 58 L. Ed. 751; Lane v. Innes, 43 Minn. 137, 143, 45 N. W. 4; D'Autremont v. Anderson Iron Co., supra); (3) however, in such cases, where service of process is sought to be accomplished by publication and mailing, though there is a slight misnomer, neither the test of idem sonans nor that of substantial similarity in print is the only one. The real test is that the summons as published and mailed must be in conformity "with the law of the state so as to give sufficient constructive notice to the nonresident party misnamed." Mr. Justice Pitney significantly observes of the notice given in the Grannis Case:

"That Geilfuss himself, upon receiving the notice, would be sufficiently warned that it af-

fected his interest in the Minnesota lands under his judgment against McKinley, is free from doubt. He would, of course, observe the misnomer; but, having received the notice which it was the purpose of the law to convey to him, he could not safely ignore it on the ground of the mistake in the name, any more than, if personally served with the summons within the state of Minnesota, he could have ignored it on account of a similar misnomer." 234 U. S. 398, 34 Sup. Ct. 784, 58 L. Ed. 1363.

It must be observed that the statutory provision construed required not only publication, but that the notice be mailed to the defendant, and that the waiver of the rule of strictness was justified on the presumption that Geilfuss had received the notice so transmitted to him by the United States mails; the court thus taking judicial notice of the regularity of delivery of the United States mails.

[17] It would appear, from this and other cases, to be the declared rule of the federal court that, where a nonresident was sought to be made a party defendant by publication, and his name was incorrectly indicated in the notice, and such notice does not actually come to him, he has the right to rely on the rule of strictness applicable in the service of process by publication and in the giving of such constructive notice to nonresident defendants.

In the instant case the notice purported to have been given complainants is not set out in the record. No doubt it was given according to the averments of the bill descriptive of the parties sought to be made respondents thereto, and sought to be bound by the decree quieting title, to wit, "Abraham G. Moore, or, if dead, his devisees, heirs, and next of kin." As we have observed, if Abraham G. More was in life when the process was sought to be perfected on him by publication, then that part of the decree purporting to be against his devisees, heirs, or next of kin by class, and not by name, was and is void as to them. His death is not averred by that pleading in the former suit, so far as is disclosed by the record; the contrary fact is shown to have been averred in this former suit. The indefinite, unusual, and ineffectual decree rendered on such attempted perfecting of service by publication was against "Abraham G. Moore, or, if dead," against "his devisees" (that is, if he left a will), or, if he died intestate, against his "heirs or next of kin," and also against certain other named defendants, "or, if any of them be dead," against their "devisees, heirs, and next of kin."

[18] It is sufficient to say, as we have pointed out, that the Alabama statutes did not authorize and declare such indefinite procedure as due process of law in proceedings to quiet title to land.

In Cona v. Henry Hudson Co., 86 N. J. Law, 154, 90 Atl. 1031, Ann. Cas. 1916C, 999, a suit to recover damages for an alleged breach of covenant of seizin and right to convey, it is pointed out that the chancery act provided that a suit in equity may proceed against a defendant by name and "his heirs" where the complainant is unable to ascertain whether the defendant is dead, and complainant is unable to ascertain the names and residences of his heirs, provided notice, as required by law, be published against absent defendants. The notice given was under a chancery act authorizing such service of process by publication in such cases.

In Hill v. Henry, supra, the New Jersey court declared that in a suit to quiet title to land the chancery act in question, authorizing such service by publication, had no application. The court said:

"The act throughout contemplates a proceeding against definite individuals known to have an actual existence, not an indefinite class whose membership and whose very existence are unascertained." 66 N. J. Eq. 150, 160, 57 Atl. 554, 558.

This observation touching the New Jersey statute to quiet title under such published notice is pertinent in the construction of the Alabama statute authorizing bills to quiet title and of other statutes providing for constructive notice.

In the case at bar the claim of fraud is specifically alleged. The jurisdictional facts averred in the bill filed in the case of Gill v. Moore et al. are now alleged to be wholly untrue; and it is averred that by reason thereof that court was sought to be given a colorable jurisdiction of the subject-matter, but that the service of process on these complainants was sought to be perfected by publication against them as nonresidents of the state of Alabama, and as residents of another state of the Union, on the fraudulent averment of inquiry and inability to ascertain their names and residences, as parties to be concluded by said decree, whereas a casual examination of the public records of the county where the lands were situate would have disclosed the fact of their identity to said complainant. The averment as to this latter fact is:

"The deeds of conveyance to said A. G. More for said lands are and were on record in the office of the probate judge of Mobile county, and in which said deeds his name is set out and spelled 'Abraham G. More.' Joanna More, the widow of said Abraham G. More, through her agents, James K. Glennon & Co., has consecutively for more than 25 years last passed assessed said lands involved in this suit for taxation, in her name, 'Joanna More,' and has regularly every year paid the taxes (state and county) on said lands; that these public records, had they been searched, would have disclosed the name of the owner of said lands to have been 'Abraham G. More.' And the state and county tax books for the past 25 years would have disclosed to the diligent or even casual investigator the fact that said lands were assessed for taxation in the name of 'Joanna More, by Jas. K. Glennon & Co., Agents.' And James K. Glennon & Co. were during all of said time, and are still, prominent real estate agents in the city of Mobile, and could have readily furnished all information as to the names and residences of the widow and heirs at law of the said Abraham G. More, deceased."

[19] The statutes providing for constructive notice by publication required and imposed the duty of diligent inquiry on the complainant in former suit, Gill, for the parties in adverse interest to be made respondents. He was bound to exercise that reasonable diligence to ascertain the names and residences of all such parties having or claiming an interest in the lands, and to make them parties respondent by perfecting service as required under our statutes (Code, §§ 3106, 5443) and by due process of law.

[20] It is unnecessary to multiply authorities to support the rule that the means of knowledge is the equivalent of knowledge (Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; Gamble v. Black Warrior Coal Co., 172 Ala. 669, 55 South. 190; Veitch v. Woodward Iron Co., 76 South. 124³), and that this rule has application when the circumstances of the case impose the duty of a reasonable inquiry, and even where it is not required by the express mandate of the statute (Bank v. Baker, 82 Cal. 114, 22 Pac. 1037, 6 L. R. A. 833).

[21] It is no doubt true that, so far as a substituted service on a class of unknown claimants is permitted at all, under the Constitution in proceedings quasi in rem it rests upon the ground of necessity; and "this necessity will not justify the omission of personal service upon all who could with reasonable diligence be ascertained and found. This principle is recognized even in cases which sustain the power to bind unknown owners by substituted service in actions of the character now under consideration." Tyler v. Judges, 175 Mass. 71, 55 N. E. 812, 51 L. R. A. 433; Shepherd v. Ware, 46 Minn. 174, 48 N. W. 773, 24 Am. St. Rep. 212; Title, etc., Co. v. Kerrigan, 150 Cal. 289, 88 Pac. 356, 8 L. R. A. (N. S.) 682, 119 Am. St. Rep. 199; American Land Co. v. Zeiss, supra.

Under the averments of the present bill we are constrained to hold that our statutes giving the right to quiet titles to lands as to adverse claims, etc., impose on the complainant in such an action the affirmative and active duty to make a bona fide and reasonably diligent inquiry to ascertain the names and residences of all persons who claim or own an adverse interest in the lands, the titles to which are sought to be quieted, and who are sought to be concluded by the decree, and to make them parties respondent. Failing in this duty, colorable jurisdiction cannot be given a court of equity to proceed therein, and under such failure of duty no statutory authority exists for bringing in as parties respondent on the perfecting of service of process by publication supposed or actual parties in interest. Leigh v. Green, 64 Neb. 533, 90 N. W. 255, 101 Am. St. Rep. 592; Mulvey v. Gibbons, 87 Ill. 367; Farnham v. Thomas, 56 Vt. 33; Title & Doc. Co. v. Kerrigan, 150 Cal. 289, 88 Pac. 356, 8 L. R. A. (N. S.) 682, 119 Am. St. Rep. 199.

* Ante, p. 358.

[22] So construed, the Alabama statute providing for perfecting service by publication against nonresident defendants whose property rights in lands are being dealt with or sought to be concluded by judicial proceedings thereunder affords due process of law. See the leading cases on "due process of law." Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1.

[23] It is elementary that there must be parties to a cause of action. They are jurisdictional. Wiebbold v. Hermann, 2 Mont. 609; Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Williams v. Eggleston, 170 U. S. 304, 311, 18 Sup. Ct. 617, 42 L. Ed. 1047. It is also held that where, under a Code provision, a defendant may be designated by a fictitious name, the plaintiff being ignorant of his real name, such fact of ignorance must be alleged, and the ignorance be genuine. Gardner v. Kraft, 52 How. Prac. (N. Y.) 499; Crandall v. Beach, 7 How. Prac. (N. Y.) 271. And in such case, as soon as the real name is ascertained, it must be substituted by amendment, and this does not change the cause of action. McCabe v. Doe, 2 E. D. Smith (N. Y.) 64; Hancock v. Sears, 93 N. Y. 82; Gould on Pleading (6th Ed.) p. 240.

[24] Appellant's demurrer likewise challenges the sufficiency of the present bill, on the ground that it shows that complainants' right was barred by the statute of limitations (Code, § 3178), and the decision to the effect that the same limitation applies to a bill to set aside a decree obtained by fraud. Gordon v. Ross, 63 Ala. 363; Cromelin v. McCauley, 67 Ala. 542. This rule has no application to nonresident strangers to the proceeding. Sweeney v. Tritsch, 151 Ala. 242, 44 South. 184; Curry v. Peebles, supra; Gay et al. v. Brierfield Co., 94 Ala. 303, 11 South. 353, 16 L. R. A. 564, 33 Am. St. Rep. 122; Mitchell v. Rice, 132 Ala. 120, 31 South. 498.

[25] Original suits in equity may be brought within one year after the discovery of the fraud to vacate a decree obtained, as in the instant case. Code, § 4852; Duncan v. Watson, 198 Ala. 180, 73 South. 448; Manegold v. Beavan, supra.

The former suit eventuating in the challenged decree (on January 25, 1912) was filed in November, 1911. It is averred in the bill to vacate the same (filed September 16, 1916) that complainants had no knowledge or information of such suit or decree until January, 1916. Thus the suit by original bill in the instant case, filed by third parties to the decree sought to be vacated, was brought within the time prescribed by law.

For the failure of jurisdiction of the chancery court in the suit of Gill v. Moore, these appellees, the devisees of Abraham G. More, deceased, were not deprived of their property in question by the due process of law, and

the decree there rendered has no binding effect as to either of them.

The decree of the chancellor is affirmed. Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur in result.