54 So.2d 296

### INGALLS et al. v. INGALLS et al.
### 6 Div. 113.

Supreme Court of Alabama.
June 28, 1951.

Rehearing Denied Oct. 18, 1951.

Earl McBee, Birmingham, guardian ad litem for appellants.

324

Lange, Simpson, Robinson & Somerville, Birmingham, for appellees-cross-appellants Robt. I. Ingalls, Sr., and Ellen Gregg Ingalls.

Waites & Tucker, Birmingham, for appellee-cross-appellant Pixton.

Francis H. Hare and Chas. W. Greer, Birmingham, for other appellees.

**STAKELY, Justice.**

This is an appeal from a decree of the equity court construing six trusts between living persons and ordering a reference to the register to ascertain and report with respect to a claim made by Robert I. Ingalls, Jr. in the amount of $51,747.56 for reimbursement for expenditures for the support and maintenance of the two minor appellants for a period beginning May 13, 1948 and ending December 31, 1949. The decree ordered Robert I. Ingalls, Jr. to file an itemized statement of his claim prior to the date of holding the reference. The trusts are six in number and for identification have been designated as trusts "B", "C", "D", "E", "F" and "G". The names of the several trustees serving respectively at the time of the filing of the bill of complaint are listed in paragraph two thereof as follows:

"Trust B: Robert I. Ingalls, Jr.

"Trust C: Robert I. Ingalls, Sr., Robert I. Ingalls, Jr.

"Trust D: Robert I. Ingalls, Sr. and the First National Bank of Birmingham

"Trust E: Ellen Gregg Ingalls, Robert I. Ingalls, Jr. and the First National Bank of Birmingham

"Trust F: Ellen Gregg Ingalls, Robert I. Ingalls, Jr. and M. F. Pixton

"Trust G: Robert I. Ingalls, Sr., Robert I. Ingalls, Jr., and M. F. Pixton."

The bill of complaint was filed by all of the trustees of the several trusts except Robert I. Ingalls, Jr. He was made a party respondent both individually and as trustee and his two minor daughters Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls were also made parties respondent. These minor children as representatives of all of the descendants of Robert I. Ingalls, Jr. are the primary beneficiaries of all the trusts. They were well represented in these proceedings by a guardian ad litem.

The major questions involved on this appeal grow out of the following rulings made by the court, (1) the declaration of the court that Trusts F and G mandatorily require the distribution of income without respect to the discretion of the trustees and (2) the declaration of the court that Robert I. Ingalls, Jr. should be reimbursed for proper expenditures for maintenance, support, comfort and education made in behalf of his two daughters Elesabeth and Barbara for the period May 13, 1948 to and including December 31, 1949.

This litigation arose out of the failure of the trustees of the trusts to furnish the beneficiaries any support after Robert I. Ingalls, Jr. was discharged as President of the Ingalls Iron Works Company on May 15, 1948 and his salary of $45,000 per year terminated. Prior to that time he as their father had been furnished funds for their support without question when he requested it. Robert I. Ingalls, Jr. took the position that it was the duty of the trustees to provide for the comfort, education, support and expenses of travel of the beneficiaries and also that he should be reimbursed for what he had been forced to spend for that purpose when the trustees refused to furnish it.

The position taken by the trustees contrary to that of Robert I. Ingalls, Jr. was that none of the trusts contemplated disbursements from the trust estate for and to the extent that necessary funds are available from another source, that is, from the father. In other words the position was taken that the trustees should not make reimbursement on the theory that it was the father's legal duty to support his children.

There were ample trust funds available at all times for the support of the beneficiaries. The stock of the Ingalls Iron Works Company owned by them had for years paid an annual dividend of $28,750. The trust estates owned numerous other valuable securities. The Ingalls Iron Works Company made after taxes $2,677,-773.53 in 1948 and $1,955,545.19 in 1949. That concern had on deposit $11,000,000 in cash and bonds when this case was tried. There was $116,015.55 cash in the trust estates in 1948 and $129,347.56 cash in 1949.

Trusts B, C and D were each created on December 31, 1938. R. I. Ingalls, Sr. was the donor of Trust B. Ellen Gregg Ingalls, the wife of R. I. Ingalls, Sr., was the donor of Trust C. Robert I. Ingalls, Jr. was the donor of Trust D. The original corpus of each of these trust estates consisted of 500 shares of Ingalls Iron Works Company stock. Each of these indentures contained the recital that the donor had "carefully considered all of the provisions of the within trust indenture." These trust instruments are almost identical in language and each expressed it to be the "sole purpose" of the settlor to assure the beneficiaries "of some degree of financial independence." The beneficiaries of Trust B are Elesabeth Ingalls and any other such grandchildren or descendant of the grantor who may thereafter be born. The beneficiaries of Trust C are Elesabeth and Barbara Ingalls and Robert I. Ingalls' descendants "hereafter born." The beneficiaries of Trust D are Eleanor Flick Ingalls so long as she is the wife of Robert I. Ingalls, Jr. and his descendants "heretofore or hereafter born." There is no contention that Eleanor Flick Ingalls has now any interest in Trust D as beneficiary and no denial that her interest merged with that of Elesabeth and Barbara Ingalls after her divorce from Robert I. Ingalls, Jr. Trust E was executed December 27, 1941. Robert I. Ingalls, Sr. was the settlor. In a preamble to the indenture the settlor expressed a desire "to see his descendants safely and adequately provided for" against the catastrophe of postwar depression as well as a desire to establish a "back-log against the hazards of time and of their youth and inexperience." Trust E beneficiaries are Elesabeth and Barbara Ingalls and "such other descendants of Robert I. Ingalls, Jr. as may from time to time during the continuance of this trust be living." The original corpus of Trust E was 1,000 shares of Ingalls Iron Works Company stock.

Trusts F and G were each created on March 15, 1943. Robert I. Ingalls, Sr. was the settlor of Trust F and Ellen Gregg Ingalls the settlor of Trust G. The corpus of Trust F was 2,000 shares of Ingalls Iron Works Company stock and the corpus of Trust G was originally 500 shares of Ingalls Iron Works Company stock. The beneficiaries of Trusts F and G are Elesabeth and Barbara Ingalls and such other descendants of Robert I. Ingalls, Jr. "as may from time to time be living" during the existence of each trust. The provisions of Trust F and Trust G are substantially the same except that there is some variation in their respective preambles, both preambles, however, being designed to convey the same general idea. We set out the parts of Trust F which are regarded as material, as follows:

"Whereas, having gone through the period since the first World War and having witnessed many accumulations of years of effort swept away, and desiring to see his descendants safely and adequately provided for against the possibility of such a catastrophe, and desiring to establish a backlog for the protection of his descendants against the hazards of the time and their own youth and inexperience, the Grantor has long followed a policy of making liberal gifts in trust to his descendants heretofore or hereafter born;

"Whereas, commencing in the year 1925, the Grantor has been gradually relinquishing control of the business of The Ingalls Iron Works Company and its subsidiaries by making gifts of his stock interests therein to his son, Robert I. Ingalls, Jr., and to the children and descendants of said son;

"Whereas, the said policy of the Grantor has been further motivated by (a) a desire and determination to provide such descendants with an income, so that they may be assured of some degree of financial independence, irrespective of any adverse effect which changing conditions may hereafter have on the Grantor's remaining and independent estate, (b) the excessive rates of income taxes imposed by the Federal Government and the State of Alabama and (c) the ultimate desire of the Grantor to retire from business; and

"Whereas, the Grantor is desirous of further effectuating and carrying out said policy by providing such children and de-

scendants of said Robert I. Ingalls, Jr., heretofore or hereafter born, with further income so that they may be assured of an added degree of financial independence, irrespective of any adverse effect which changing conditions may hereafter have on the Grantor's remaining and independent estate, by the execution and delivery of these presents.

\*   \*   \*   \*   \*   \*

"The Trustees shall have the power to set up from time to time out of income such reserves for depreciation, taxes, or other possible expenditures or contingencies as they deem necessary or desirable.

\*   \*   \*   \*   \*   \*

"(b) The Trustees shall hold said trust estate in trust for the use and benefit of Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls, both children of the Grantor's son, Robert I. Ingalls, Jr., and of such of any other descendants of said Robert I. Ingalls, Jr., as may from time to time during the continuance of the trust be living. So long as any such descendant shall be under the age of twenty-one years, the Trustees shall use and apply for his or her support, comfort and education his or her pro rata share of the net income from said estate.

"From and after the time when such descendant of the said Robert I. Ingalls, Jr. shall attain the age of twenty-one years, and during the continuance of this trust, the Trustees shall thereafter pay over to such descendant his or her pro rata share of the income from the trust estate as the Trustees deem such descendant from time to time capable of wisely expending or managing. Any portion of any such descendant's pro rata share of income from the trust estate not distributed to such descendant under the foregoing provisions shall be added to the principal of the trust estate but may be distributed to such descendant by the Trustees subsequently if and when they deem such descendant capable of wisely expending and managing the same. Any such portion so added to the principal shall be segregated on the books of the Trustee so as to be clearly available for such distribution.

\*   \*   \*   \*   \*   \*

"It is intended that the Trustees shall so far as is practicable exercise their discretion in making distributions hereunder so as to provide approximately equal treatment per stirpes for each child of the Grantor's son Robert I. Ingalls, Jr., and for the descendants of any deceased child of said son. It is recognized, however, that because of the different ages of descendants, of the probable fluctuations in the values of property, of the possible birth of other beneficiaries after distributions have been begun hereunder, and of the varying needs, sources of other income, and conduct, of the various beneficiaries hereunder, differences as to distributions to the several beneficiaries hereof may result. The Trustees are not required to equalize such differences in distributions but there is vested in the Trustees hereunder full power and authority in the absolute exercise of their discretion to equalize or adjust as between beneficiaries differences which may grow out of distributions made hereunder, so as to provide to the extent deemed practicable, just and consistent with the purposes of this trust, substantially equal benefits throughout the duration of the trust to all descendants of the Grantor's son, Robert I. Ingalls, Jr., per stirpes.

\*   \*   \*   \*   \*   \*

"Upon the termination of the trust, the Trustees shall transfer and pay over the property then constituting said trust estate to such of the descendants of the Grantor's said son, Robert I. Ingalls, Jr., as may then be living, in equal shares per stirpes; Provided, However, that in the event any such descendant shall not at said time have attained the age of twenty-one years, then though the share of such descendant in said trust estate shall be deemed then to have vested in him or her the Trustees shall continue to hold the same in trust for him or her until he or she shall attain said age, using and applying for his or her support, education and comfort such part of the net income of his or her said share of said trust estate and of the principal thereof as the Trustees deem necessary or desirable for said purposes."

It thus appears that Trusts B, C and D were executed on the same day and Trusts F and G were executed on the same day. The settlors are members of one family. The beneficiaries of all six trusts are identical except that Eleanor Flick Ingalls was a beneficiary of Trust D so long as she was the wife of Robert I. Ingalls, Jr. It appears that each trust indenture was prepared with the advice of legal counsel. When Trust B was created Robert I. Ingalls, Jr. was earning a salary of $45,-000 a year and was receiving $22,500 in dividends on Ingalls Iron Works Company stock owned by him. In addition he was receiving income as one of the beneficiaries of Trust A. He owned various other valuable securities. His salary continued until May 15, 1948 when he was discharged as President of Ingalls Iron Works Company. When this case was tried he was living in the same elaborate home in which he resided when the trust instruments were executed. His parents were fully familiar with their son's financial condition when each trust was created. His father and mother owned all of the outstanding stock of Ingalls Iron Works Company not owned by their son or by these trust estates and Trust A. Together they owned 3,694 shares of outstanding 15,000 shares of stock of that company.

I. One of the two main contentions made by Robert I. Ingalls, Sr. and his wife and the guardian ad litem is that Trusts F and G do not direct the trustees to use and apply for the support and education of the beneficiaries during their minority the net income of these trust estates, but that they confer upon the trustees discretion to say whether or not any such income should be so used or to determine the amount of such income to be so used.

The trustees in their bill of complaint ask the court for instructions as to whether Robert I. Ingalls, Jr. should be reimbursed from one or more of the trust estates made for the support, education, maintenance and comfort of the minor respondents and if so, from what trust estates should the same be gathered and in what proportions. In reaching its conclusions the court, among other things, made the declarations which have been heretofore referred to. This brings us to a consideration of the construction which should be accorded the following provision which appears in the first paragraph of paragraph (b) of Trust F and the first paragraph of paragraph (b) of Trust G as follows: "So long as any such descendant shall be under the age of 21 years, the trustees shall use and apply for his or her support, comfort and education his or her pro rata share of the net income from said estate."

The court took the view that the foregoing language is clear and unambiguous and means that payment of income, while the beneficiaries are minors, is mandatory and further that, if considered, the provisions of the other trusts, emphasize this view. The appellants insist that this provision should not be lifted from its context, but should be construed with the other provisions of the trust instrument in which it appears, with the result, as they contend, that payment of income during the minority of the beneficiaries is discretionary with the trustees. The problem here raised means that the intention and purpose of the settlor must be ascertained, since the intent and purpose of the settlor is the law of the trust. Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526; Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381. And it is a primary rule of construction that the settlor's intent and purpose must be gathered from the whole instrument, conflicting clauses being reconciled if possible. Blackwell v. Burketts, 251 Ala. 233, 36 So.2d 326; Watters v. First National Bank, 233 Ala. 227, 171 So. 280. With these principles in mind, we consider that the direction contained in the first sentence of paragraph (b) of Trusts F and G, which has been hereinabove set forth, is unambiguous and explicit. The direction to apply the income of the trust to the comfort, support and education of the beneficiary during the minority means that expenditure of the income for the comfort, support and education of the beneficiaries is mandatory. This provision is not obscured or modified by the other provisions in the instrument. The right to set up reserves out of income for taxes, depreciation and other pos-

sible expenditures and contingencies is not inconsistent with the direction to use and apply the income, but on the contrary is designed to further and keep in continued well being the condition of the trust, so as to make expenditures of income reasonably possible. In fact the quoted provision shows that only disbursement of net income to the beneficiaries is contemplated. The general purpose of setting up a backlog for the security and independence of the beneficiary is not inconsistent with the foregoing mandatory direction. In these matters it should be kept in mind that the trust does not end with the minority of the beneficiaries, but continues into the period after the minor becomes an adult when, under the provisions of the trusts, the discretion of the trustee may prevail as provided in the trust. Then further owing to the difference in age of the two living beneficiaries (one was 7½ years old and the other 4½ years old when the trusts were established) and the possibility of such difference in age of other beneficiaries that might be born, a situation could develop where there must be an expenditure for one beneficiary when a minor and not for one who has reached majority. Finally if the desire for a backlog to establish security evidences a purpose to give discretion to the trustees as to the expenditures to or for the beneficiaries, why was it thought necessary to confer expressly such discretion to be exercised during the time after the beneficiary reaches majority? The fact that such discretion was then conferred but not given during minority is of obvious significance.

█ As we understand the matter it is not contended by Robert I. Ingalls, Jr. that all of the income of Trusts F and G must be expended for the support, education, maintenance and comfort of the minor beneficiaries as soon as it is earned. There is no requirement in either of the trust instruments to that effect. What may be required for their support and maintenance for one period may differ from that required for another period, but the net income of Trusts F and G not expended is intended to remain in the trust as such income to meet the future needs of the

beneficiaries which may arise. The trustees have no right to withhold any part of it so long as it is needed for the comfort, support and education of the beneficiaries, nor do they have a right to treat it as a portion of the corpus of the estate or to use only so much of the net income as they, in the exercise of their discretion, consider necessary or desirable for that purpose. It is the command of the settlors in each of Trusts F and G that the net income of these trusts is to be used and applied for the support, education, maintenance and comfort of each minor beneficiary so long as such beneficiary is under 21 years of age. The wisdom of these instructions is not for the trustees to question. If they desire for themselves to make expenditure of the income for these purposes they are given the privilege of so doing. If they prefer to turn over this income to a third person of their selection to so use and apply the same there is nothing to prevent such action. In both Trusts F and G (as well as in each of the other trust instruments), appears the following: "Where it is herein directed that funds shall be used and applied by the trustees for the benefit of any beneficiaries, the trustees may, in their discretion pay over such sums to the person having custody of such beneficiary, or to such other person as they may select, including the beneficiary, to be used and applied for the purposes herein directed, and the receipt of such person shall be full discharge to the trustees as to any sums so paid."

The settlors knew the probably income which would be derived from the stock put in trust. They evidently wanted to have a generous part in the support, comfort and education of those designated as beneficiaries. Overabundance of funds available to the minor beneficiaries should not result because while the trustees have no right arbitrarily to withhold from use income from the trusts needed for the comfort, support and education of the beneficiaries during minority, still the mandatory duty resting on the trustees does not require them to use or expend amounts in excess of what is reasonable and proper for the support, comfort and education of the mi-

nors according to their station in life. If there is any question as to what is reasonable and proper to be used or expended for the benefit of the minor beneficiaries, this is a legal question to be determined by judicial decree, if necessary, but is not a matter which can be determined within the discretion of the trustees.

The trust agreement expresses a desire that the trustees in the "exercise of their discretion in making distributions" will provide approximately equal treatment for each of the children of Robert I. Ingalls, Jr. and their descendants. It is recognized that because of the different ages of the descendants, of the probable fluctuations in the values of property, of the possible birth of other beneficiaries after distributions have begun and the varying needs, sources of other income and conduct of various beneficiaries hereunder, differences as to distributions to the several beneficiaries may result. It is contended that the discretion here mentioned applies to the use and application of the net income for the support and maintenance of the minors under 21 years of age. It seems to us, however, that the settlors were referring to the discretion they had previously given the trustees in making certain distributions. For example, the trustees were vested with discretion after each beneficiary attained the age of 21 years to pay over to him such income as they deemed him capable of wisely expending or managing. The trustees were also given the discretion of subsequently paying over to each adult beneficiary so much of the income as they had previously withheld if and when they later deemed him capable of wisely managing and supervising it. The trustees had also been given the absolute discretion to use and apply the principal for the support and welfare of any beneficiary, adult or minor, affected by an emergency. We think that these were the discretionary rights to make distributions to which the settlors referred when they expressed a desire to have the trustees "provide approximately equal treatment" in making distributions to beneficiaries.

The second sentence, second paragraph of paragraph (b) of Trust F reads as follows:

"Any portion of any such descendant's pro rata share of income from the trust estate not distributed to such descendant under the foregoing provisions shall be added to the principal of the trust estate but may be distributed to such descendant by the Trustees subsequently if and when they deem such descendant capable of wisely expending and managing the same."

It is argued that the use of the plural "provisions" results in making the sentence last above quoted qualify not only the last sentence of the first paragraph of paragraph (b), but also the first sentence of the second paragraph of paragraph (b). This does not appear to us to be a correct construction. On the contrary we think that the settlors of each trust intended to provide (1) for the use and application of the net income for the support of the minor beneficiaries and (2) to provide for the discretionary payment of some income directly to adult beneficiaries so long as the trusts existed. The words "foregoing provisions" refer naturally and normally to the provisions governing the distribution of income to adult beneficiaries mentioned in the preceding sentence.

II. But if it be assumed that the provision of Trusts F and G, " * * * So long as any such descendant shall be under the age of twenty-one years, the Trustees shall use and apply for his or her support, comfort and education his or her pro rata share of the net income from said estate", is rendered ambiguous or of doubtful import by a consideration of all the provisions in the instrument, we still are of the view that this provision should be considered mandatory, as we shall undertake to show. If the provision is ambiguous and of doubtful import we can look to the circumstances attending the execution of the instrument, the relationship of the parties and what was within their mutual knowledge. McGhee v. Alexander, 104 Ala. 116, 16 So. 148; Scheuer v. Britt, 218 Ala. 270, 118 So. 658; 32 C.J.S., Evidence, § 960, p. 907.

As we have pointed out all of the trusts on which instructions are asked have a relationship to each other. Both settlors and the beneficiaries belong to one family. All trusts were prepared with the advice of legal counsel. Trusts B, C and D were executed the same day and Trusts F and G were executed the same day. All of the trusts are part of a general scheme or plan to provide for the same beneficiaries, except as to Eleanor Flick Ingalls, as has been pointed out. In the preamble of Trusts F and G there is a reference to other gifts of stock in the Ingalls Iron Works Company to the children and descendants of Robert I. Ingalls, Jr. In considering the circumstances surrounding the execution of Trusts F and G we can look to the provisions of the other trusts for the purpose of ascertaining the purpose and intention of the settlors in Trusts F and G. McGhee v. Alexander, supra; Scheuer v. Britt, supra; 32 C.J.S., Evidence, § 960, p. 907.

In order to consider the provisions of the several trust instruments which deal with the distribution of the income for the support and maintenance of the beneficiaries, we set out the following provisions in this respect which appear in each of the other trust instruments.

### Trusts B, C and D

Par. (b) of Trust B provides in part as follows: "Until each such descendant shall attain the age of twenty-one years the trustees shall use and apply for his or her support, education, expenses of travel and comfort, such part of his or her share of the net income from said estate and of the principal thereof as the Trustees deem necessary or desirable for that purpose."

Note: Par. (c) of Trust C and Par. (d) of Trust D contain the provisions above quoted except the words "twenty-five years" appear instead of "twenty-one" years.

### Trust E

Par. (b) of Trust E provides in part as follows: "During the continuance of the trust all income from said trust shall be added to and become principal. From the principal so augmented the Trustees shall from time to time pay to or for the use of each of said descendants of Robert I. Ingalls, Jr., such sum or sums as the Trustees may deem necessary for her or his proper support, education and comfort * * * Until each such beneficiary shall attain the age of twenty-five years the Trustees shall use and apply such sums as they in the exercise of their discretion deem necessary or desirable for the support, education and comfort of such beneficiary."

In Trusts B, C and D it is clearly provided that each beneficiary should share in the net income and principal for the purposes indicated, the amount to be distributed to them to be determined by the trustees in the exercise of their discretion. In Trust E there is the equally clear provision that it was left to the discretion of the trustees to determine what sums should be used and applied for the benefit of the beneficiaries until they were 25 years of age and to use and apply to such beneficiaries such sums as they deemed necessary or desirable for their support, education and comfort.

In Trusts F and G no discretion is conferred so long as any beneficiary is under the age of 21 years. The trustees are explicitly directed to use and apply for the support of each beneficiary their pro rata share of the net income from both estates.

The provision above quoted from the first paragraph of paragraph (b) of Trust F and also of Trust G provides for the support and maintenance of the beneficiaries during their minority. As evidencing the mandatory character of this provision of Trusts F and G pertaining to the maintenance of minor beneficiaries we note that in paragraph (b) of Trust B, paragraph (c) of Trust C and Paragraph (c) of Trust D the following provision: "Any portion of the share of such descendant in such net income not distributed currently by the trustees for said purpose may be accumulated by the trustees for such descendant and invested under the powers of investment herein given to the trustees."

Trust E requires the trustees to add income to the principal and empowers them to invest and reinvest the same. Provisions of this character are appropriate to trust instruments, giving the trustees discretion as to the amount of trust funds to

be used for the support of beneficiaries. Such provisions would be out of place in Trusts F and G if the purpose of the settlors was to require the net income to be distributed for the support of the beneficiaries. It is important to note that such provisions are not found in Trusts F and G. We also note that in Trusts F and G the trustees are given discretion in case of an emergency "to use and apply such part of the principal of the trust" as the trustees deem reasonable for such purpose. The trustees are not given power to use and apply income for emergency purposes. This is evidently for the reason that so long as any beneficiary is under the age of 21, the net income must be held for support of the beneficiary and after each beneficiary reaches 21, his share of the income is added to and becomes a part of the principal. No such emergency provisions permitting the expenditure of principal is to be found in any of the other trust instruments, because the trustees may properly use income for emergencies.

We further note that in Trusts B, C, D and E with reference to applying such part of each beneficiary's share of net income for his support as the trustees deem necessary or desirable the following provision: "In exercising said discretion the trustees shall have the right to rely upon the statement of the parent or parents of such beneficiary as to the desirability or necessity of such distribution."

In the decree of the lower court construing Trusts F and G the significance of the absence of this discretionary provision from Trusts F and G was noted by the court when it said: "Aside from the positive directions in these Trusts F and G to use the income for the support, education and comfort of the beneficiaries, there is no provision permitting the trustees to rely upon the statement of the parent or parents as to the desirability or necessity for any such distribution. The omission of this provision common to the other trusts is most persuasive that the settlors of Trusts F and G did not wish to leave it to the discretion of the trustees whether they paid the net income therefrom to the beneficiaries."

The first sentence of the second paragraph of paragraph (b) of Trusts F and G reads as follows: "From and after the time when any such descendant of the said Robert I. Ingalls, Jr. shall attain the age of twenty-one years, and during the continuance of this trust, the Trustees shall thereafter pay over to such descendant his or her pro rata share of the income from the trust estate as the Trustees deem such descendant from time to time capable of wisely expending or managing." It is obvious that the foregoing sentence does not mean to provide for the support of minor beneficiaries. It has reference to the distribution of income to such beneficiaries after they reach the age of 21 years and it instructs the trustees to pay over to each such beneficiary so much of his pro rata share of the trust income as the trustees may from time to time deem him to be capable of wisely expending or managing. There seems to be no doubt but what the trustees are given a discretion in distributing trust income to adult beneficiaries or that they may pay such distributions directly to such beneficiary.

Trusts F and G each contain a provision that if there are in being any minor beneficiaries when the trust terminates, his share of the trust estate shall be deemed to vest in him, but that the trustees shall continue to hold the same until he attains his majority and use and apply for his support such part of the income or principal as the trustees deem necessary or desirable. It is contended that this discretionary provision shall be read into the provisions of each of these two trust instruments, which directs the trustees to use and apply for each minor beneficiary his pro rata share of the net income while the trust is in existence. However the fact that the settlors expressly conferred discretion upon the trustees in making distribution for minors after the trust terminates and refrained from conferring upon them discretion in that regard during the existence of the trust, indicates that had they intended to give the trustees discretion in using the net income for the support of minor beneficiaries, they would have said so. But they did not so provide.

It is further insisted that the settlors themselves individually or as trustees have by their conduct placed a construction upon Trusts F and G other than that appearing in the language of the trusts and that such construction must now govern.

█ The trial court who heard and saw the witnesses was not impressed with this position. Nor do we under the circumstances in the case think that the conduct of the parties should be of controlling importance. Income was never paid at periodic intervals from any of the trusts. Up until about two years ago it seems to have been the practice when Robert I. Ingalls, Jr. wished money for the children from the trusts, it was forthcoming at his request. It is true that his requests were always relatively small, but being a matter entirely within the family there was an informality in handling the trusts which should hardly be regarded as indicating a crystalized interpretation of the meaning of the trusts. The whole situation changed apparently because of a personal difficulty arising between Robert I. Ingalls, Sr. and Robert I. Ingalls, Jr. about two years ago and since that time no income from any of the trusts has been paid to or for the use of the beneficiaries. Looking at the events in their entirety, we do not feel that in this case there has been such a practical construction put on the trusts as would warrant us to interpret the trusts in accordance therewith. Of course if the trusts are not ambiguous or of doubtful import, then the practical construction of the parties is of no importance whatsoever. 32 C.J.S., Evidence, § 960, pp. 908–909.

█ III. It is very earnestly contended that since it is the common law duty of a father to support his minor children, there is no room for complaint if trustees administering a trust estate set up for the purpose of furnishing such support neglect or decline to perform the trust. The argument is made that the father, who furnished support during the period in which the trustees declined to act, is not entitled to any reimbursement. There is no doubt that under the common law it is the duty of a father to support his minor children. But the question presented here is whether where estates are expressly created for the support, education, maintenance and comfort and expenses of travel of a child during minority, and the instrument creates a mandatory duty on the trustees to use and apply the net income of the estate for such purposes, the fact that the father of beneficiaries is financially able to furnish their support, relieves the trustees of their duty to undertake to perform the trust, when they accepted the administration of the trusts. In the case of Bethea v. McColl, 5 Ala. 308, this court said: "In general, a father is required to maintain his children, if of ability to do so, although they may be entitled to property in their own right. Butler v. Butler, 3 Atkins, 59; Darley v. Darley, ib. 399. Formerly, it appears, to have been considered, that even where the fund was expressly given for the maintenance of the child, the father, if of ability, must, notwithstanding, educate and support him. Andrews v. Partington, 3 Bro.C.C. 60. But that rigorous rule has since been, if not departed from, at least modified, and the court will, in general, direct the trust fund, to be employed as directed by the donor, without reference to the ability of the father. Hoste v. Pratt, 3 Vesey, 729; Sesson v. Shaw, 9 ib. 285; Fairman v. Green, 10 ib. 45."

In Clarke v. Clarke, 246 Ala. 170, 19 So. 2d 526, 527, the trust involved directed the trustee to pay to or for the benefit of his son during his life the net income of the trust property. There was the further instruction giving the trustee the right or power if "the trustee deems best" to use and apply such income "for the comfort, support, and maintenance of my said son and/or his [said] family, if he has a family," instead of paying the trust income to or for the support of the son. Subsequently a daughter was born to the son and his wife and his wife and daughter claimed to be entitled to share with her father in the net proceeds of the trust. The son took the position that he was entitled to all of the income by virtue of the first provision of the trust and that the latter provision should be ignored. At the time the suit was tried the daughter, who was

involved, was a minor. In this connection the court said: "If what the testator intended was simply to benefit her son exclusively, leaving the support and maintenance of his family entirely dependent upon his affection, or the performance of the duty exacted of him by law in that regard, then it is difficult to discern why the family should be named in connection with the disposition of the trust (Item 3) and nowhere else."

In 46 C.J. p. 1276, § 66, 67 C.J.S., Parent and Child, § 21, the general rule is stated: "A trust fund created or bequeathed for the purpose of supporting or educating a child may be applied for that purpose, notwithstanding the liability of the father and the fact that he is able to support or educate the child out of his own means."

It is obvious that the question is fundamentally a question of intent. Such is the reasoning underlying the general principle which is stated in 121 A.L.R. p. 197 as follows: "As a general rule, where a gift is given expressly for the support of a child the gift may be so applied without reference to the ability of the parent to furnish that support." (Among the cases cited to support the general doctrine is Bethea v. McColl, supra.)

There is a distinction made by the courts between trust instruments which vest a trustee with discretion to use and apply or not to use and apply trust funds for the support of the beneficiary and trust instruments which vest the trustee with a discretion as to the amount of such funds to be used for that purpose. In Scott on Trusts, Vol. 2, § 187, p. 197, it is stated: "If he (the trustee) is directed to pay *so much* of the income and principal as is necessary for the support of a beneficiary he can be compelled to pay at least the minimum amount which in the opinion of a reasonable man would be necessary. If, on the other hand he is to pay a part of the principal to the beneficiary entitled to the income, if in his discretion he *deems it wise,* the trustee's decision would normally be final, although as will be seen the court will control his discretion when he acts in bad faith. (Emphasis and parenthesis supplied.)"

See Hill, Appellant v. Clark, 74 Pa.Super. 181; National Valley Bank v. Hancock, as Trustee, 100 Va. 101, 40 S.E. 611, 57 L.R.A. 728, 611.

Since the beneficiaries of these trusts are under the authorities which have been cited entitled to receive the support for which the several trust estates were created, the furnishing of that support does not depend upon the father's financial ability. Since this is true the father or legal custodian or guardian of the children could come into court and require the trustees to furnish support, if they indicated an intention not to do so. The authorities agree that when such is the situation, the person furnishing support is entitled to what he expends towards the accomplishment of that purpose. In 121 A.L.R. 190, it is said: "In general, the criterion for determining whether the parent should be reimbursed for expenditures is whether the parent would have been given an allowance for such support upon an application therefor in advance, although it has also been held that, 'to justify it (an allowance for past expenses) would require a stronger case than to procure an order for a future allowance, or, at least, all the facts requisite for a future allowance and a satisfactory showing why application of such allowance was not made in advance.'"

The lower court made no effort to determine what would be proper to be paid over to the father as reimbursement for furnishing the support which the trustees refused to furnish. On the contrary the court ordered a reference to be held to ascertain and make report in this connection. The hearing before the register was interrupted when this appeal was taken and this hearing will be completed when the case returns to the lower court.

We think the decree of the lower court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER and LAWSON, JJ., concur.