66 So.2d 96

### Ex parte ARRINGTON et al.

2 Div. 315.

Supreme Court of Alabama.

May 21, 1953.

Rehearing Denied June 30, 1953.

244

Wilkinson & Skinner, Birmingham, for petitioners.

Adams & Gillmore, Grove Hill, and Mc-Corvey, Turner, Rogers, Johnstone & Adams, Mobile, for respondent.

**STAKELY, Justice.**

This is an original petition in this court by seventy-three individuals who sought to make themselves respondents and cross-complainants to a bill in equity pending in the Circuit Court of Choctaw County, Alabama. The application here is for a mandamus to the Hon. Joe M. Pelham, Jr., as Judge of the aforesaid court, sitting in equity, to require him to vacate and set aside a decree entered by him in Case No. 777 on the docket of the aforesaid court, entitled C. B. Morgan et al. v. Ellen Nix Clanahan, striking the answer and cross-bill filed in the aforesaid cause by the seventy-three persons, who are the petitioners here.

C. B. Morgan and thirty-two other parties filed a bill to quiet title to a tract of land lying in Choctaw County, Alabama, and more particularly described in the bill as follows:

"W ½ of NW ¼ of Section 1; and NE ¼ of Section 2; all in Township 10 North, Range 3 West."

The lands described in the cross-bill, which was stricken, also lie in Choctaw County, Alabama, and are more particularly described as follows:

"W ½ of NW ¼ of Section 2 and the SE ¼ of SW ¼ and the SW ¼ of the SE ¼ of Section 35."

The original bill appears to be filed under and pursuant to § 1116 et seq., Title 7, Code of 1940, which appear in Article 2, Chapter 32, Title 7, Code of 1940. These statutes in Article 2 are described as "Proceedings in Rem to Establish Title to Land".

The answer and cross-bill was amended several times, but we shall only deal with the answer and cross-bill as last amended. While in the answers and cross-bills as originally filed title to all of the respondent land, namely the 240 acres described in the original bill, was claimed by the respondents, in the answer and cross-bill as last amended, the respondents claim only an undivided ⅚ interest in the W ½ of the NW ¼ of Section 1 and admit that the complainants in the aggregate own an undivided ⅙ interest in this 80 acres. The respondents claim only an undivided ⅚ interest in the W ½ of the NE ¼ of Section 2 and admit that the complainants in the aggregate own an undivided ⅙ interest in this 80 acres. As to the new land which they seek to bring into the suit, they contend for the full and complete interest in the NE ¼ of the NW ¼ of Section 2, lying West of the Nix Bridge Road and admit that the complainants in the aggregate own an undivided ⅙ interest in the NE ¼ of the NW ¼, lying East of the Nix Bridge Road. As to the SE ¼ of the NW ¼ of Section 2, lying West of the Nix Bridge Road, they claim an undivided ⅚ interest, but only a ⅔ interest in that part lying East of the Nix Bridge Road, and they admit that the other interest is owned by the cross-respondents in the aggregate, some being original complainants and some being entirely new parties. As to the SE ¼ of the SW ¼ of Section 35, they claim a ⅔ interest as to a portion thereof and a ⅚ interest as to the remaining portion. They admit that some of the cross-respondents own in the aggregate the remaining interest, some of these cross-respondents being original complainants and some being entirely new parties. As to the SW ¼ of the SE ¼ of Section 35, they apparently claim the full and complete interest in a portion of this forty and only a fractional interest in the remaining portion. As to the interest which they do not claim, they admit it is owned by some of the cross-respondents in

the aggregate, some being original complainants and some being entirely new parties. It appears that the petitioners claim that a tenancy in common exists and they seek by this cross-bill to have not only the land described in the original bill but also the additional land described in the cross-bill, sold for division among the alleged tenants in common.

According to the answer and cross-bill it is alleged that the land described in the original bill together with the new land described in the cross-bill is one body of land, constitutes the entire Nix Place with the exception of one forty-acre tract, and was owned by Daniel Nix at the time he died or by his wife Adeline Nix at the time she died.

It appears from the answer and cross-bill that the following described land was patented by the United States to Daniel Nix on March 1, 1859:

"NW ¼ of NE ¼ and E ½ of NW ¼ of Section 2, Township 10, Range 3 West; and SE ¼ of SW ¼ and SW ¼ of SE ¼ of Section 35, Township 11, Range 3 West."

It also appears from the answer and cross-bill that the following described land was patented by the United States of America to David Daniel on June 1, 1860:

"W ½ of NW ¼ of Section 1, S ½ of NE ¼ and NE ¼ of NE ¼ of Section 2, Township 10, Range 3 West."

No record title appears out of either Daniel Nix or David Daniel and presumably this is true as to the additional land which is sought to be brought into the litigation by the cross-bill.

It seems that the petitioners claim whatever title or interest they have in both the land described in the original bill and the additional land described in the cross-bill as heirs of Daniel Nix, who died in 1862. In this connection the petitioners allege in their answer and cross-bill the following:

"Daniel Nix and David Daniel were one and the same person whose true name was David Daniel Nix, but if respondents are in anywise mistaken in this averment, then they aver that David Daniel granted to Daniel Nix, I, before the said Daniel Nix, I, died in 1862, the land described in the patent from the United States of America to David Daniel.

"Respondents aver that the evidence of such grant was lost, mislaid, misplaced or destroyed before the same was filed for record or that the record thereof was destroyed in a fire that consumed the court house in Choctaw County, Alabama, in 1871, or that Daniel Nix, I, purchased said land from David Daniel and paid the full purchase price for same and went into possession thereof before his death."

On January 17 and 18, 1951, a hearing was had and evidence taken ore tenus. The cause was submitted for final decree on January 18, 1951, and taken under submission at the time. Then followed a motion by the respondents to set aside the submission, a tender of a motion for leave to file an answer and cross-bill, which sought to bring the alleged remainder of the Nix Place by way of the cross-bill into the case, and motions by complainants to strike the tendered answer and cross-bill.

On January 28, 1951, the court set aside the submission taken on January 18, 1951, and allowed the respondents thirty days within which to file an answer. The respondents were also granted the right to cross-examine any witnesses who were examined on January 17th and 18th and to submit any competent evidence they desired. Like leave was given complainants.

The respondents were denied by decree of the court the right to file the answer and cross-bill attached to their motion to set aside the submission. This is the answer and cross-bill which sought to bring into the litigation the additional land alleged to be a part of the Nix Place. On September 22, 1952, the court rendered a decree holding in effect that the respondents were not entitled to have the land described in the original bill sold for division, that they were not entitled to have the additional land sold for division and on that date the court entered a decree strik-

ing the answer and cross-bill as last amended to the bill of complaint as last amended.

The case is submitted here on the petition for mandamus and the demurrer and answer of Judge Pelham, the demurrer not being waived by reason of filing the answer.

In the proceeding here for writ of mandamus the question for decision is whether the trial judge should be required to vacate his order striking the answer and cross-bill of the respondents to the original bill.

■ It seems to us that in analyzing the case, we should first consider the answer and cross-bill so far as it pertains to the land described in the original bill and then the answer and cross-bill as it pertains to the additional land described in the answer and cross-bill. In the statutes which make up what we have described as proceedings in rem to establish title to land, appearing in Article 2, Chap. 32, Title 7, Code of 1940, the statutes undertake to describe the contents of the bill of complaint and also the contents of a cross-bill. There appears to be no provision with reference to the contents of the answer in the in rem proceedings similar for example to Section 1111, one of the sections making up Article 1, Chapter 32, which is described as "Personal Proceedings; How Conducted". But we assume that surely the statutes providing for proceedings in rem contemplate that a person who files an answer under the in rem statutes can avail himself of equitable defenses to the original bill in the in rem proceedings, even though the bill is filed "against said lands", because the bill is also filed against "any and all persons claiming * * * any title to, interest in, lien or encumbrance on said lands, or any part thereof". § 1116, Title 7, Code of 1940.

■ It must be appropriate in an answer to a bill filed under the in rem statutes for a respondent to show that the complainant does not own the entire interest in the land but only owns an undivided interest in the land and is a cotenant with the respondent. Since this appears to be true, there can be no reason why such an answer may not be made a cross-bill, and an independent equity set up in the cross-bill for which relief may be given by the court. In the present case the independent equity is the right to have the property sold for division because of the cotenancy. Our search has failed to find any authority for this view, but it is analagous to our cases which allow the assertion of an independent equity by a respondent under what are termed the in personam statutes. These statutes which appear as § 1109 et seq., make no provision for a cross-bill. And yet this court has consistently held that where a respondent is brought into proceedings under this group of statutes and the independent equity is outside the scope of these statutes, such independent equity may be asserted in a cross-bill. Manning v. Manning, 203 Ala. 186, 82 So. 436; Bell v. McLaughlin, 183 Ala. 548, 62 So. 798; Chestang v. Bower, 224 Ala. 469, 140 So. 537; Walling v. Oliver Farm Equipment Co., 244 Ala. 674, 15 So.2d 497.

But it is contended that the in rem statutes exclude any procedure not provided for in the in rem statutes. In making this statement the history of the in rem statutes, which was known as the Grove Act when adopted by the legislature, is discussed at length, the need of in rem statutes being referred to in Gill v. More, 200 Ala. 511, 76 So. 453. We are referred, for instance, to the California case of Title & Document Restoration Co. v. Kerrigan, 150 Cal. 289, 88 P. 356, 8 L.R.A., N.S., 682. This California case was upheld by the Supreme Court of the United States in American Land Co. v. Louis Zeiss, 219 U.S. 47, 31 S.Ct. 200, 55 L.Ed. 82. The California statutes were the result of the destruction of the public records in the San Francisco earthquake. We are also referred to a similar situation which produced the Illinois in rem statutes, because of the destruction of the court records in the great Chicago Fire. Gage v. Caraher, 125 Ill. 447, 17 N.E. 777; Gormley v. Clark, 134 U.S. 338, 10 S.Ct. 554, 33 L.Ed. 909. The same general idea appears to support the enactment of the statutes in Florida which were considered by the Supreme

Court of Florida in McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 51 A.L.R. 731.

■ While we appreciate the value and the need of the in rem statutes especially with reference to wild, uncultivated lands which may have lain out for many years in certain parts of this state without visible signs of ownership such as the payment of taxes, etc., still it seems to us that when in the in rem proceeding persons are brought in, the in rem proceedings necessarily become in a sense personal or at least quasi in rem because the proceedings become against the person in respect to the res. 44 Am.Jur. p. 8. It would be an injustice to say that such persons when so brought in who have independent equities, cannot set them up and assert them. As we have shown our cases hold that an independent equity may be asserted in a proceeding under the in personam statutes, although there is no statutory provision for a cross-bill. So we think that so far as the lands described in the original bill are concerned, the respondent should have the right if there is a cotenancy to set it up and have the lands sold for division, even though the original bill was brought under the in rem statutes for the purpose of quieting title. Steele v. Freeman, 250 Ala. 336, 34 So.2d 139.

■ But it is insisted that Section 1125, Title 7, Code of 1940, which is included in the statutes providing for the in rem proceedings, provides for a cross-bill and specifies the kind of cross-bill for which provision is made. It does not seem to us, however, that the cross-bill described in Section 1125, is the only kind of cross-bill that a respondent may file when called into court to defend against a claim that a complainant owns certain land or an interest therein. Taken in connection with the averments of the original bill, the cross-bill shows that the petitioners here claim as descendants or heirs at law of Daniel Nix, who was granted part of the land involved by the United States Government and who was either granted the other part under another grant or acquired a complete equity in it before he died. It does not seem to us that the in rem statutes should be construed to bar a respondent to a proceeding filed under them from all relief in such proceedings, except a bare declaration of title. It is not entirely a question of what the statute authorizes. The statute does not have to authorize the court to sell for division. An equity court is authorized to do equity in Alabama and in doing so "the court in exercising its jurisdiction shall proceed according to its own practices in equity cases." Section 186, Title 47, Code of 1940. It seems to us that Section 1125 should be construed to provide a remedy whereby the respondent might not only obtain an adjudication of his title, but should also be authorized to set up an independent equity, if he has an independent equity. We do not think that this statute should be construed to be a prohibition against the respondents, when they ask for adjudication of their undivided interest in the land, from also seeking a sale for division.

We come now to the status in the litigation of the additional land sought to be brought in by the cross-bill. In order to bring the additional land into the litigation, many new parties are sought to be added to the suit, in order that all parties interested in the land may have their day in court. It is seriously objected on the part of the original complainants that this additional land should not be allowed to be brought into the litigation; first, because it is additional land to the land described in the original bill, second, because it is claimed under a title distinct from the title under which the land in the original bill is held and third, because it injects into the litigation many persons with whom some of the complainants in the original case, who have no interest in the additional land, should not be forced to litigate.

The original complainants stand squarely on the principles set forth in Propst v. Brown, 250 Ala. 282, 34 So.2d 497, to the proposition that additional land cannot be brought into litigation. We have carefully examined this authority. In that case questions relating to a part of a public park were sought to be litigated in the original bill and the court held that the lands making up the rest of the park were not germane to the issues of the original

bill. In that case the cross-bill sought to bring in other property in which the original complainant was not interested. But in the case at bar, the complainants or most of them, are alleged to be interested in the additional land as cotenants. In Propst v. Brown, supra, there was no claim of cotenancy of the parties sought to be brought in by the cross-bill in the part of the public park described in the original bill.

But it seems to us that there is a serious reason why the complainants in the original bill in the case at bar should not be required to litigate with reference to the additional land sought to be brought in by the cross-bill. This is because when analyzed carefully it appears that the title to the additional land is a title distinct from the title under which the land in the original bill is held. It is true that in the answer and cross-bill it is alleged that Daniel Nix and David Daniel are one and the same person or that Daniel Nix conveyed his land to David Daniel in a deed which was destroyed in a fire that consumed the county court house of Choctaw County, Alabama. There is further an effort to show that all of the acreage, both the land described in the original bill and the land described in the cross-bill, constitute one tract of land which is known as the Nix Place. However, the title to this acreage was received by patent from the United States Government many years ago and whatever may have been the origin of the title to these tracts of land, for many, many years at least, they have been held under distinct and separate chains of title. Judge Pelham in his decree found to this effect as follows:

"Under this amended answer and cross-bill filed June 26th, 1952, the respondents depart from the provisions allowed by Title 7, Section 1125 in many respects and in addition they bring before the Court the title to E ½ of NW ¼ of Section 2, Township 10 North, Range 3 West, SE ¼ of S W ¼ of Section 35 and SW ¼ of SE ¼ of Section 35 of Township 11 North, Range 3 West, in this answer

and cross-bill. This land is not mentioned in the original bill filed by C. G. Morgan, et al., and, while it may be in what is known as the Nix chain of title, it is entirely foreign to the original bill as amended in this case."

█ It is not practicable to try to set out the details of the evidence which shows that the land described in the original bill constitutes a separate and distinct chain of title from the land described in the answer and cross-bill. But according to the check which we have made as carefully as possible, we consider that Judge Pelham reached a correct conclusion. There is no doubt that in order for a cross-bill to lie, it must be germane to or an outgrowth of the subject matter of the original bill. In other words, the cross-bill may not introduce a controversy which is outside the scope of the original bill. 19 Am.Jur. pp. 230–231; 44 Am.Jur. p. 66; Ann.Cas.1917D, p. 675; City of Florala v. Louisville & N. R. Co., 213 Ala. 342, 104 So. 769; Maryland Casualty Co. v. Holmes, 230 Ala. 332, 160 So. 768; Boyd v. Presley, 244 Ala. 16, 12 So.2d 85; Graham v. Powell, 250 Ala. 500, 35 So.2d 175; Propst v. Brown, 250 Ala. 282, 34 So.2d 497.

The controlling rule deducible from the cases is well summarized in Riley v. Wilkinson, 247 Ala. 231, 23 So.2d 582, 585, as follows:

"We do not think the contention can be maintained in a cross-bill filed in respect to the pending petition, nor any of the matters there sought to be adjudicated. There are two good reasons why this is so. The first is that a cross-bill must set up matter germane to the original bill. Lowery v. Rosengrant, 216 Ala. 364, 113 So. 237; Ashe-Carson v. Bonifay, 147 Ala. 376, 41 So. 816; Howell v. Randle, 171 Ala. 451, 459, 54 So. 563. That means that its object and purpose must be defensive and seek to defeat a recovery in whole or in part, or to modify a recovery. Maryland Casualty Co. v. Holmes, 230 Ala. 332, 160 So. 768; Emens v. Stephens, 233 Ala. 295, 172 So. 95."

In Meyer v. Calera Land Co., 133 Ala. 554, 31 So. 938, 939, with reference to the subject matter of a cross-bill, it was said:

"Moreover, the title they ask to have quieted is distinct from complainant's claim, and for that additional reason is not, in this case, a proper subject for a cross bill."

In 74 C.J.S., Quieting Title, § 70, p. 101, it is said:

"In general, a cross complaint can be sustained only in respect of matters germane to those of the original bill, and hence generally will not lie to quiet a title distinct from that which plaintiff in his original bill prays to have quieted. * * *"

█ Since the subject matter of the cross-bill is not germane to the subject matter of the original bill, because the land claimed in the one is under a distinct chain of title from that claimed in the other, this is a sufficient answer to the proposition that we should require Judge Pelham to vacate his order. On the basis of this ruling, his order was correct and should be sustained so far as striking the answer with reference to the land described in the cross-bill. Although we have said that the respondents should have the right to set up their independent equity with reference to the land in the original bill, we do not see how we can separate the answer and the cross-bill, as to the land described in the original bill and the land described in the cross-bill, and so we do not see how we can put Judge Pelham in error for the position which he has taken.

█ We, of course, understand that separate bodies of land may be partitioned in kind in one proceeding, but this is true if all the land is owned by the same tenants in common, although their respective interests in the several tracts are different. Martin v. Carroll, 235 Ala. 30, 177 So. 144; 68 C.J.S., Partition, § 55, pp. 78–79. In the case at bar many new parties are sought to be brought into the litigation by the cross-bill, which was stricken. Many of these parties have no interest whatsover in the land embraced in the original bill and which is sought to be sold for division by the original respondents. We have no hesitation, therefore, in saying that the land set up in the original bill may not be partitioned in kind with the land set up in the cross-bill. Martin v. Carroll, supra.

If the parties wish to proceed further in the original suit with reference to the land described in the original bill, then that can be done by further proper procedure in the trial court. And if an additional suit is sought to be filed with reference to the additional land described in the cross-bill, that, of course, is a procedure which is open to the parties who seek to be cross-complainants here.

It results that the writ of mandamus is denied and the rule nisi is discharged.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.