93 So.2d 753

**Ex parte Ellen Gregg INGALLS.**

**6 Div. 74.**

Supreme Court of Alabama.

March 7, 1957.

Rehearing Denied April 4, 1957.

Lange, Simpson, Robinson & Somerville, Jas. A. Simpson and Reid B. Barnes, Birmingham, for petitioner.

Cabaniss & Johnston and W. H. Trueman and Dempsey F. Pennington, guardian ad litem, Birmingham, for respondent.

MERRILL, Justice.

Petitioner, Ellen Gregg Ingalls, filed her petition here for a writ of mandamus or other appropriate writ, to require the Honorable J. Russell McElroy, the Presiding Judge of the Tenth Judicial Circuit, sitting in equity, to vacate two decrees. These decrees sustained a motion to strike the amended answer and cross bill of petitioner, filed in response to a bill of complaint of the First National Bank of Birmingham.

The purpose of the bill of the First National Bank was to state its account as co-trustee of "Trust C," have its accounts approved, and to be released and discharged from any further accounting as such trustee.

The original bill of the First National Bank alleges that Ellen Gregg Ingalls, as grantor or settlor, entered into a trust indenture, known as "Trust C," with Robert I. Ingalls, Sr., Robert I. Ingalls, Jr., and C. W. Zander as the original trustees for the benefit of the two children of Robert I. Ingalls, Jr., and his descendants. The only living descendants of Robert I. Ingalls, Jr., are alleged to be Elesabeth Ridgely

Ingalls, age twenty, and Barbara Gregg Ingalls, age seventeen.

It is further alleged in the bill that the complainant bank became one of the trustees of "Trust C" upon the death of Robert I. Ingalls, Sr., who died July 12, 1951, and that, since that time, complainant has acted as corporate co-trustee.

According to the bill, the trust indenture provided that any corporate trustee, qualified and acting, might be removed and substituted by an instrument in writing by the acting and surviving individual trustee electing to remove such corporate trustee and designating a successor corporate trustee. The bill alleges that the surviving and acting individual trustee, Robert I. Ingalls, Jr., elected to remove complainant as corporate trustee by instrument executed under date of December 22, 1955, and to substitute Hamilton National Bank, a national banking corporation with its principal place of business in Tennessee, as the corporate trustee of the trust.

It is also averred that complainant's functions have terminated but that if "for any reason, said substitution procedure should not be presently effective, complainant desires to and does hereby tender and release to the said surviving or successor trustee, to-wit, Robert I. Ingalls, Jr., and said Hamilton National Bank, all of the funds, assets and properties of the trust in the possession or under the control of complainant and hereby offers to account for all of complainant's receipts, disbursements and actions as trustee, to the end that it may by decree herein be released and finally discharged from further accountability as such trustee."

The parties respondent to the bill were Elesabeth Ridgely Ingalls and Barbara Gregg Ingalls, minors, (a later pleading shows Elesabeth to have married), Robert I. Ingalls, Jr., as guardian, and Ellen Gregg Ingalls, impleaded as grantor or settlor under the trust indenture; also, Robert I. Ingalls, Jr., and Hamilton National Bank as the current trustees under the indenture, and also Robert I. Ingalls, Jr., as contingent beneficiary.

Ellen Gregg Ingalls then filed her answer and cross bill averring numerous alleged wrongful acts of Robert I. Ingalls, Jr., and of other persons or corporations, not only with respect to "Trust C," but also with respect to trusts designated as "B," "D," "E," "F," and "G;" also with respect to the operation and management of Ingalls Iron Works Company, and also with respect to Mr. Ingalls' actions as guardian for his two daughters, and other matters of controversy and litigation between Mrs. Ingalls and her son. She also alleged that the appointment of Hamilton National Bank, as corporate trustee of "Trust C," was illegal and in bad faith, and that the purported appointment should be invalidated, and by an amendment, she alleges such appointment was void. She prayed, inter alia, for the removal of Robert I. Ingalls, Jr., as a trustee of the several trusts, the removal of Hamilton National Bank, as trustee of certain of the trusts, the removal of M. F. Pixton, as trustee of certain of the trusts, and that the attempted appointment of Hamilton National Bank, as trustee of "Trust C," be declared void.

The complainant bank moved to strike the amended answer and cross bill, and this motion was granted by the court below. All the parties to this suit, including the guardian ad litem for the minor, except, of course, Ellen Gregg Ingalls, join in urging that the motion to strike was properly granted. This petition for a writ of mandamus or other appropriate writ is brought here for the purpose of requiring the respondent to vacate the decrees sustaining the motion to strike. The respondent, Judge McElroy, waived the issuance of a rule nisi and filed his demurrer to the petition.

There are only two questions presented to this court in this proceeding. The first is whether Ellen Gregg Ingalls had a sufficient interest in "Trust C" to maintain the cross bill, and the second is whether the

48

other relief sought is germane to the issues raised by the original bill.

■ Mrs. Ingalls has no standing, solely in her capacity as settlor of "Trust C," to question the administration of the trust. Culbertson v. Matson, 11 Mo. 493; In re Reynolds' Estate, 131 Neb. 557, 268 N.W. 480; Padelford v. Real Estate-Land Title & Trust Co., 121 Pa.Super. 193, 183 A. 442; Barrette v. Dooly, 21 Utah 81, 59 P. 718; Restatement of Trusts, § 200; II Scott on Trusts, § 200.1 (1956).

■ Title 58, § 65, Code of 1940, as amended, provides that a settlor may file a petition in the circuit court in equity to remove a trustee for certain causes. We agree with the trial court that this statute presupposes that the person whose removal as trustee is being sought is then a trustee. The theory of the cross bill, however, is that the substitution of the Hamilton National Bank is void, and that it never became a trustee. It seems to us that it would be unreasonable to assume that the legislature intended by this section to allow the settlor to raise the question of removal of a substituted trustee in a final settlement proceeding by the removed trustee who has absolutely no interest in the controversy which the cross-complainant seeks to raise.

Of course, Mrs. Ingalls may still invoke the aid of Tit. 58, § 65, in a separate proceeding for that purpose, once it is established that the corporate trustee sought to be removed is an acting trustee.

The petitioner maintains that if she cannot seek the relief she prays for as settlor of the trust, she may still do so in her capacity as a beneficiary. This contention is made because section (g) of "Trust C" provides, in part:

"In the event that upon the termination of the trust no descendant of Grantor shall be living, the Trustees shall transfer and pay over the property then constituting said trust estate to such person or persons as would be entitled to inherit said property and in the proportion in which they would be entitled to inherit the same from the Grantor's husband, Robert I. Ingalls, under the laws of Alabama then in force, had he died at said time a resident of Alabama, intestate, and owned said property."

The petitioner claims that since she could possibly be the person to inherit from her husband, the above quoted provision makes her a contingent remainderman, who, under our decisions in Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550, and Badham v. Johnston, 239 Ala. 48, 193 So. 420, has a sufficient interest to invoke the aid of a court of equity concerning the administration of a trust.

■ We cannot agree with this contention. In the first place, we are convinced that Mrs. Ingalls did not intend that she would be such a person to inherit from her husband or that any of the property represented by "Trust C" should revert to her. The intention of the settlor is the law of the trust, and if the nature, subject matter and objects are reasonably ascertainable and the scheme not inconsistent with some established rule of public policy, that intention must control and the courts will sustain and give it effect. Goodman v. McMillan, 258 Ala. 125, 61 So.2d 55; Stariha v. Hagood, 252 Ala. 158, 40 So.2d 85; Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526; Ingalls v. Ingalls, 256 Ala. 321, 54 So.2d 296.

Section (r) of the instrument creating "Trust C" reads: "The Grantor has considered carefully all of the provisions of the within Trust Indenture with counsel and declares the trust hereby created to be irrevocable."

It is unquestionable that the primary objects of Mrs. Ingalls' bounty were her two granddaughters and any future descendants of herself or her son. Section (f) provided that if there should be no living descendants of Robert I. Ingalls, Jr., then the income should go to Robert I. Ingalls, Jr., and if he should die, it should go to

his father and her husband, Robert I. Ingalls, Sr. If she had intended to have any property revert to her she could easily have so stated. But construing Section (g) with the other provisions of the indenture, it seems clear that she meant to remove any possibility of a reversionary distribution from herself or her next of kin, but to assure its vesting in her husband's next of kin. This is made manifest by the fact that a claim of a resulting trust might have arisen had she omitted this provision entirely, because the trust was created from funds provided by her husband.

Also, the law of descents and distributions in effect in 1938, when the trust was created, and now, Title 16, § 10, Code 1940, provided, as to the personal estate of the decedent, that the widow, if there are no children, is entitled to all the personal estate. Under the trust indenture, all the descendants of Mr. and Mrs. Ingalls, Sr., had to be dead before the trust terminated. Thus, under the cited statute, if all the beneficiaries died, she would take all the residue. This was so without including Section (g) in the indenture. It is reasonable to hold that she did intend as we have indicated. Of course, her right to the residue would still be contingent upon two possibilities; first, that the statute of descents and distributions would not be changed before the trust terminated and, second, that her separate estate was not of greater value than the property which might be distributable to her. See Chambless v. Black, 250 Ala. 604, 35 So.2d 348. A brother and two sisters of her husband, Robert I. Ingalls, Sr., are still living.

At best, we think the settlor has such a remote and speculative expectancy that she cannot maintain this cross-action as a contingent remainderman. In order for her to receive any property from the trust estate, under her own theory and construction of the indenture, she, "a person of advanced age and of limited physical stamina," must outlive her son, her twenty year old married granddaughter, her eighteen year old unmarried granddaughter, and any descendants the son or the granddaughters might have; and the trustees must not have distributed to each beneficiary all of the share of such beneficiary, which action the trustees may take after each beneficiary shall have attained the age of twenty-one years. This gives Mrs. Ingalls only an expectancy and not such a "substantial right in that connection, which the court considers as sufficient to invoke its aid." Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550, 561 [21].

■ With reference to trusts other than "Trust C," the cross bill was subject to be stricken on the grounds that the issues raised are not germane to the issues raised by the original bill, as amended. Ex parte Arrington, 259 Ala. 243, 66 So.2d 96; Cox v. Cox, 260 Ala. 524, 71 So.2d 275; Graham v. Powell, 250 Ala. 500, 35 So.2d 175; Propst v. Brown, 250 Ala. 282, 34 So.2d 497.

■ A motion to strike was the proper method to raise the question of the sufficiency of Mrs. Ingalls' interest to question the accounts of the First National Bank and to test the germaneness of the amended cross bill to the original bill. Ex parte Arrington, supra; Arnold v. Arnold, 246 Ala. 86, 18 So.2d 730; Maya Corporation v. Smith, 240 Ala. 371, 199 So. 549. The court below correctly granted the motion to strike the cross bill.

Writ denied.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.